159 N.J. Super. 340 (1978)
387 A.2d 1259
RANDOLPH H. KOCSE, PLAINTIFF,
v.
LIBERTY MUTUAL INSURANCE COMPANY, VIRGINIA MCNULTY, GIOCCHINO T. CACI, A/K/A JACK T. CACI, ANGELA CACI AND JACQUELINE CACI, AN INFANT BY HER GUARDIAN AT LITEM, ANGELA CACI, DEFENDANTS, AND LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
ALLSTATE INSURANCE CO., MARC CACI, AN INFANT BY HIS GUARDIAN AD LITEM, ANGELA CACI, MICHAEL FIORE, GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF FRANCESCO FIORE, DECEASED, AND MICHAEL FIORE, GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF LOUISE FIORE, DECEASED, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 1, 1978.
*341 Mr. Frank R. Cinquina for defendant and third-party plaintiff Liberty Mutual Insurance Co. (Messrs. Schwartz and Andolino, attorneys).
Mr. W. Stephen Leary for third-party defendant Allstate Insurance Co. (Messrs. Leary and D'Ambrosio, attorneys).
TROAST, J.D.C. (temporarily assigned).
On this motion for summary judgment defendant Allstate Insurance Company seeks to be relieved from its obligation to defend its insured, Randolph H. Kocse. Allstate contends that as a result of making settlement payments of its policy limits it is discharged from its duty to defend. There is no reported case in this State which is controlling on the issue before the court, and as between the other jurisdictions there is a sharp division as to the rule to be applied. Annotation, *342 "Liability Insurer  Duty to Defend," 27 A.L.R.3d 1057.
The nature of this litigation and the facts giving rise to this controversy are set forth in an opinion reported at 152 N.J. Super. 371 (Law Div. 1977). On a prior motion in this case it was determined that Liberty Mutual Insurance Company was obligated to afford insurance coverage to Kocse as an excess insurance carrier. Liberty has appealed that decision and takes the position that it is not obligated to assume the defense, but it represents that it will assume the defense at its own cost and expense if the coverage question is decided adversely to Liberty by a court of last resort. Liberty contends that Allstate as primary carrier is obligated to continue with the defense of the insured and is not entitled to shift the obligation to defend to the excess carrier. Consequently, the court must determine whether Allstate as primary carrier is obligated to continue with Kocse's defense pending determination of Liberty's appeal, and if it is determined prior to the end of litigation against Kocse that there is no excess coverage, whether Allstate must continue to represent Kocse.
On this motion the court is called upon to construe the applicable provision of the insuring agreement which reads as follows:
Allstate will defend, at its own expense and with counsel of its choice, any lawsuit, even if groundless, false or fraudulent, against any insured for such damages which are payable under the terms of this Part, but may make such settlement of any claim or suit as it deems expedient.
Allstate argues that its obligation to defend its insured is limited to suits involving claims which are payable under its policy. Allstate contends that since it has paid the policy limit there are no longer claims against Kocse which it is obligated to pay, and therefore it is discharged from further performance of its obligation to defend.
*343 In support of its position that its duty to defend is dependent upon a continuing obligation to pay claims against its insured Allstate cites Lumbermen's Mut. Cas. Co. v. McCarthy, 90 N.H. 320, 8 A.2d 750 (Sup. Ct. 1939). In Lumbermen's the court held the insurer's obligation to defend was a dependent promise, stating:
* * * it seems to us that the primary obligation imposed upon the insurer was to pay the insured's legal liability for damages on account of the contingencies specified, and that the other provisions were depending thereon and designed to implement that primary obligation. [8 A.2d at 752]
In Lumbermen's the insurer defended its insured through trial and exhausted the policy limits satisfying one of the judgments against the insured. Under these circumstances the New Hampshire court said:
Having elected to defend rather than to settle, the insurer's duty is to defend in good faith and with due diligence and in such a way as to protect the rights of the insured, but, having done so up to judgment and then having paid that judgment and incidental expenses to the full limit of its obligation, we are of the opinion that it thereafter has no duty of defense. [8 A 2d at 752; emphasis supplied]
There are a number of decisions in other jurisdictions in addition to Lumbermen's which support Allstate's position: Denham v. LaSalle-Madison Hotel Co., 168 F.2d 576 (7 Cir.1948), cert. den. 335 U.S. 871, 69 S.Ct. 167, 93 L.Ed. 415 (1948); Commercial Union Ins. Co. v. Adams, 231 F. Supp. 860 (S.D. Ind. 1964); Traveler's Indem. Co. v. New England Box Co., 102 N.H. 380, 157 A.2d 765 (Sup. Ct. 1960); National Union Ins. Co. of Washington D.C., v. Phoenix Assur. Co. of New York, 301 A.2d 222 (D.C. App. 1973); General Cas. Co. v. Whipple, 328 F.2d 353 (7 Cir.1964); Hartford Acc. and Indem. Co. v. South Carolina Ins. Co., 252 S.C. 428, 166 S.E.2d 762 (Sup. Ct. 1969); Liberty Mut. Ins. Co. v. Mead Corp., 219 Ga. 6, 131 S.E.2d 534 (Sup. Ct. 1963), rev'g 107 Ga. App. *344 167, 129 S.E.2d 162 (App. Ct. 1962); Oda v. Highway Ins. Co., 44 Ill. App.2d 235, 194 N.E.2d 489 (App. Ct. 1963); cf. Prince v. Universal Underwriters Ins. Co., 143 N.W.2d 708 (N.D. Sup. Ct. 1966).
Other states have construed the insurer's obligation to defend as an independent duty which is not discharged on payment of the policy limit. In American Employers Ins. Co. v. Goble Aircraft Specialties Inc., 205 Misc. 1066, 131 N.Y.S.2d 393 (Sup. Ct. 1954), the claims against the insured exceeded $2,000,000 and the limit of liability under the policy was $300,000. The court found the duty to defend continued after payment of the policy limits, stating:
We are urged to find that the plaintiff, in the event that its coverage limit is exhausted, will not be required to continue the defense of any action then pending or any new actions thereafter commenced. Research fails to disclose any decision in this state precisely in point. Presumably such contention is based upon the premise that the payment of total indemnification terminates the policy. This might be so if the agreement to defend were a stipulation subordinate to and dependent upon the agreement to indemnify. Lumbermen's Mutual Casualty Co. v. McCarthy, 90 N.H. 320, 8 A.2d 750, 753, 126 A.L.R. 894. We are not unmindful of the determination in the McCarthy case, supra. The dissent, however, held that the majority disregarded the language of the contract and construed the promise of the company to defend "... not as an undertaking for the benefit of the assured, but as a stipulation for the benefit of the insurer." [131 N.Y.S.2d at 399-400]
The New York court held that to withdraw from defense of its insured after payment of the policy limit the insurer would have had to reserve its right to do so in clear and plain language. The court said:
If plaintiff intended to reserve the right to withdraw counsel and cease to defend such actions as might be pending after payment of the total amount for which it indemnified, or to refuse to defend any new action commenced after such payments, it was under a duty to so state in the policy which it issued. The language required is such as would be clear and comprehensible to the average businessman without legal assistance. Whiteside v. Insurance Co. of Pennsylvania, 274 App. Div. 36, 79 N.Y.S. 2d 715, 717; Birnbaum v. *345 Jamestown Mut. Ins. Co., 298 N.Y. 305, 312, 83 N.E.2d 128, 132. [Id., 131 N.Y.S.2d at 400]
In Simmons v. Jeffords, 260 F. Supp. 641 (E.D. Pa. 1966), the policy language was almost identical to that involved here and the court found that "a most significant protection afforded by the policy  that of defense  is rendered a near nullity" if an insurer could discharge itself of the duty to defend by tendering payment of the policy limit. In Simmons, where the insurer offered to pay the full policy limits into court, the court said:
There is no intimation in the policy that these duties [i.e., to pay claims and to defend, etc.] may be satisfied merely by paying into court the applicable policy limits. On the contrary, a fair reading of the policy indicates that these were independent responsibilities. Certainly, if Employers could have effected a settlement of the claim and it saw fit to dispose of it in this fashion, there would be no duty to defend the action. This contingency is obviated by the last sentence of paragraph 1 (Appendix A) which authorizes Employers to settle any "... claim or suit as it deems expedient." If, however, it is unable to effect a settlement, as has occurred in this case, it must defend the action. Otherwise, a most significant protection afforded by the policy  that of defense  is rendered a near nullity. In the view this court takes, Employers' offer to pay its policy limits merely protects it from the additional exposure of being held responsible for a verdict in excess of the policy limits, which might be the case if it failed to use its best efforts to effectuate a settlement. [at 641-642]
Other cases which generally indicate that an insurer's duty to defend is not discharged upon payment of the policy limits are: American Cas. Co. v. Howard, 187 F.2d 322 (4 Cir. 1951); Travelers Indem. Co. v. East, 240 So.2d 277 (Miss. Sup. Ct. 1970); St. Paul Fire and Marine Ins. Co. v. Thompson, 150 Mont. 182, 433 P.2d 795 (Sup. Ct. 1967); Anchor Cas. Co. v. McCaleb, 178 F.2d 322 (5 Cir.1949); National Cas Co. v. Insurance Co. of North America, 230 F. Supp. 617 (N.D. Ohio 1964).
When construing language covering an obligation such as the duty to defend the insured, the court must look *346 to the reasonable expectations of the insured. We are dealing with language in a long, detailed insurance policy which an insured would find difficult to understand even after painstaking study. Certainly the language in question does not clearly and plainly indicate that the insurer may withdraw from defense of the insured upon paying the policy limits. Considerations of fairness lead to the conclusion that the obligation to defend should be considered an independent obligation. The insured purchased a policy of insurance containing an undertaking by the insurer to defend actions against its insured, and the court concludes that a fair and reasonable construction of the policy language requires Allstate to continue with the defense of Kocse.
It has been recognized by textwriters that the decisions on this point are not in harmony; however, they also indicate that the better rule is that the duty to defend continues even after payment of the policy limits. Keeton, Insurance Law, § 7.6(c) (1972); 7A Appleman, Insurance Law and Practice, § 4685.
Having come to the conclusion that Allstate does not have a right to withdraw from Kocse's defense the question arises whether under the circumstances presented here the excess carrier should assume the defense. In that regard, the court finds no contractual undertaking on the part of Liberty to take over Kocse's defense from the primary carrier and holds that the duty to defend continues to be that of the primary carrier. Contra, National Union Ins. Co. v. Phoenix Assur. Co. of N.Y., supra, where the court followed Lumbermen's, supra.
Accordingly, the court finds that Allstate is obligated to continue with Kocse's defense, and its motion for summary judgment is denied.