PHILIP A. CONWAY, Plaintiff-Appellee, *v.* COUNTRY CASUALTY
INSURANCE COMPANY, Defendant-Appellant.

Third District    No. 80-505

Opinion filed July 2, 1981.

George C. Hupp, Sr., of Hupp, Irion & Reagan, of Ottawa, for appellant.

R. J. Lannon, Jr., and Robert M. Hansen, both of Herbolsheimer, Lannon, Henson & Duncan, P. C., of La Salle, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendant insurer, Country Casualty Insurance Company, appeals from a judgment entered in the circuit court of La Salle County in favor of plaintiff insured, Philip A. Conway. The case proceeded to a bench trial on a stipulation of facts, which revealed the following.

On December 4, 1973, plaintiff Conway was involved in an automobile collision with a vehicle driven by Hayfa Assalley. Assalley subsequently filed a personal injury suit against Conway in the circuit court of La Salle County, seeking to recover damages for injuries sustained in the accident. At the time of the accident Conway was an insured under a family combination insurance policy issued by the defendant insurer. The bodily injury liability limit of the policy was $10,000. At no time was Conway in arrears in his premium payments.

Prior to the initiation of litigation by Ms. Assalley on February 19, 1975, the defendant insurer had been reimbursing her for expenditures made that were a direct result of her injuries, and compensating her for lost income under an advanced payment program. Through October 24, 1974, $9,736,79 had been paid to Ms. Assalley as advanced payments.

Subsequently, an agreement was reached between Ms. Assalley and the defendant insurer, with Conway's approval, whereby the insurer would pay to Ms. Assalley $10,742.35, representing $742.35 property damage and the bodily injury liability limit of $10,000. Accordingly, on March 11, 1975, the insurer paid Ms. Assalley $900.21 in full payment. However, Ms. Assalley did not release the plaintiff Conway from liability in exchange for this payment, and she continued to pursue her personal injury suit against him.

Thereafter, on March 24, 1975, the.defense of the Assalley/Conway lawsuit was tendered to the insurer by the law firm of Herbolsheimer, Lannon and Henson. The insurer, however, took the position that because it had already paid the policy limits to Ms. Assalley, it had been discharged of its obligation to defend Mr. Conway. The insurer informed the Herbolsheimer firm of its decision not to afford a defense for Conway in a letter dated April 22, 1975. Accordingly, the Herbolsheimer firm handled Conway's defense, and negotiated a settlement with Ms. Assalley on January 3, 1977. Under the terms of the settlement, Conway personally paid $10,000 to Ms. Assalley in exchange for a release. The firm of Herbolsheimer, Lannon and Henson thereafter submitted to Mr. Conway a statement for monies advanced and services rendered in defense of the Assalley lawsuit in the amount of $2,386.95. Country Casualty Insurance Company did not contest this amount.

Plaintiff Conway subsequently brought the instant action against the defendant insurer, seeking to recover the $10,000 he personally paid in exchange for the release of the tort plaintiff, and the reasonable costs of defense. Following a bench trial, judgment was entered for plaintiff. In an amended order, the court awarded plaintiff $10,000 (representing cost of settlement) plus $2,386.95 (representing legal fees) and prejudgment interest in the amount of $2,667.72.[1]

The defendant insurer raises three issues on appeal: First, whether the trial court erred in holding that the insurer's payment of the bodily injury liability limits of the policy to the tort plaintiff did not discharge its duty to afford a defense for the plaintiff insured; second, if a duty to defend existed notwithstanding the payment of the policy limits, whether the trial court erred in awarding to the plaintiff insured damages for the money expended by him in obtaining a settlement with the tort plaintiff; and finally, if judgment for the plaintiff was proper, whether the trial court erred in awarding prejudgment interest on any portion of the damages awarded.

The first issue which we will consider is whether the payment of the bodily injury liability limits of $10,000 by the defendant insurer to Ms. Assalley discharged it of its duty to afford a defense for plaintiff insured Conway. In resolving this issue we are naturally guided by the terms of the policy. Under section I of the insurance policy issued by defendant, the insurer obligated itself to do the following:

> "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:
> A. bodily injury, including death resulting therefrom, sustained by any person, hereinafter called 'bodily injury';

---

[1] $1,750 represents 5% interest on $10,000 from January 2, 1977 (a reasonable time after demand was made on the insurer) to July 2, 1980 (the date of the original order). $417.72 represents 5% interest on $2,386.95 from January 2, 1977, to July 2, 1980.

B. injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage';

caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of a Vehicle as defined herein or of any Non-Owned vehicle and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulant; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.

The Company shall not be obligated to pay any claim or judgment or to defend any suit or prosecute or maintain any appeal after the applicable limits of the Company's liability have been exhausted by payment of any judgments or settlements."

It is the insurer's position that because it had paid the full amount of its coverage under the policy to the tort plaintiff, subsequent to March 11, 1975, there remained no "damages which are payable under the terms of the policy." As a consequence, under the policy provisions quoted above the obligation to defend was terminated.

In support of its position, defendant principally relies upon *Denham v. LaSalle-Madison Hotel Co.* (7th Cir. 1948), 168 F.2d 576, and *Oda v. Highway Insurance Co.* (1963), 44 Ill. App. 2d 235, 194 N.E.2d 489. In *Denham*, the LaSalle-Madison Hotel Company was the insured under a casualty policy issued by the plaintiff insurer, which indemnified the insured against liability for damage to or loss of property by a guest or invitee of the hotel. As the result of a fire, approximately 250 persons suffered property damage, and made claims against the hotel in excess of $10,000. The policy provided that "[t]he limit of underwriter's liability for any one occurrence or catastrophe during the Policy period is $10,000 * * * for all loss of and damage to property of any claimant or claimants." The insurer tendered $10,000, and took the position that this action terminated its contractual obligation to afford a defense for the hotel. The pertinent policy language provided:

" 'It is further agreed that as respects insurance afforded by this policy, Underwriters shall—

'(1) Defend the Assured in his name and behalf any suit against the Assured alleging such loss and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * *.' " 168 F.2d 576, 584.

In accepting the insurer's contention, the court concluded:

"Numerous cases are cited wherein the courts have considered a similar provision. It would serve no useful purpose to enter into an

analysis of such cases as they all depend upon the phraseology of the particular provision under consideration. By analogy, however, they are of no benefit to the defendant's contention. True, paragraph (1) gives some color to the defendant's argument, but that paragraph is limited to the phrase which proceeds it, 'as respects insurance afforded by this policy.' Upon plaintiff's tender of $10,000, its liability for the payment of losses was extinguished. It was only obligated to defendant 'as respects insurance afforded by this policy,' and there being no further insurance afforded, we are of the view that its obligation to defend was likewise terminated. Defendant's theory would produce the incongruous situation that plaintiff would have a continuing obligation to defend, nothwithstanding its obligation to pay has been exhausted. We are of the view that no such liability was intended by the provision in question and that it cannot reasonably be so construed." (168 F.2d 576, 584.)

The appellate court in *Oda* relied upon *Denham* in holding that the insurer's payment of the policy limits discharged its duty to defend the insured. However, the policy language in *Oda* which related to the duty to afford a defense was unlike the language of the policy in *Denham*, and is more similar to the language of the insurance policy in the instant case. The policy in *Oda* provided that the insurer was obligated to " 'defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiations and settlement of any claim or suit as it deems expedient.' " 44 Ill. App. 2d 235, 243, 194 N.E.2d 489, 494.

Although the *Oda* court apparently did not believe the difference in policy language warranted a departure from the *Denham* holding, such was not the case in *Landando v. Bluth* (N.D. Ill. 1968), 292 F. Supp. 975, which is cited to us by the instant plaintiff. In *Landando*, defendant Bluth was insured under an automobile liability insurance policy issued by the Security Insurance Company. The bodily injury liability limit of this policy was $25,000. The provision of the policy detailing the insurer's obligation to afford a defense is identical to that of the policy in the instant case except it did not contain a paragraph relieving the insurer of its duty to defend in the situation where the policy limits have been exhausted by payment of a judgment or settlement. The insurer, Security, moved to deposit the $25,000 policy limit with the district court, and sought a court order relieving it of any further obligation to defend the insured in a personal injury suit brought by tort plaintiff Landando which arose out of an automobile accident. In support of its motion, the insurer relied upon *Denham*. The district court, however, noted the distinction between the policy language in *Denham* and that found in Security's

policy, and concluded that the insurer's obligation to afford a defense was not relieved by the tender of the policy limits. The court stated:

"The court in *Denham* regarded the particular language of the contract before it as reasonably subject only to the interpretation that the duty to defend was limited to 'insurance afforded by this policy' so that when no more insurance was in force with respect to a particular claim by virtue of the tender of the full amount of the policy coverage, no further duty to defend existed. The language in the instant case, however, does not so limit the duty to defend. A reasonable interpretation of the language, 'any suit alleging such bodily injury * * * and seeking damages which are payable under the terms of this policy' is that the insurance carrier has a duty to defend any such suit regardless of the amount of damages claimed or the tender of the limits of liability so long as part of the claim is payable under the policy.

Moreover, even if the language of the policy is deemed ambiguous, Security's motion cannot be granted. If the policy is ambiguous, it is subject to the well established legal principle that a contract is to be strictly construed against its draftsman. [Citations.] In the insurance situation it is especially appropriate that the burden of clarifying policy provisions rest with the offering company rather than with the lay public to which it is offered. In light of the frequency of litigation concerning the question involved in this case, the insurance company can reasonably be expected to make its terms clear or have doubts resolved against it." (292 F. Supp. 975, 977.)

Accordingly, the court denied Security's motion for an order relieving it of its duty to defend, although it did allow the insurer to tender the policy limits to the court.

■■ Neither *Denham* nor *Landando*, being Federal cases, are binding upon this court. However, we consider *Landando* to be more persuasive. As previously stated, the *Landando* court was faced with policy language virtually identical to that of the policy issued by Country Casualty here. Therefore, it is readily apparent that *Denham* is equally as inapplicable to the instant case. Further, *Landando* is consistent with the well recognized principle that of the two obligations owed to an insured by an insurer under a contract of insurance—the duty to idemnify and the duty to afford a defense—the latter is the broader obligation. (See *Community Unit School District No. 5 v. Country Mutual Insurance Co.* (1981) 95 Ill. App. 3d 272, 419 N.E.2d 1257; *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914.) Indeed, it is well-settled law in Illinois that the duty to defend exists where there is only the possibility of policy coverage. (*Clemmons v. Travelers Insurance*

*Co.* (1980), 88 Ill. App. 3d 201, 410 N.E.2d 445, *appeal allowed* (1981), 82 Ill. 2d 583; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123; *Palmer v. Sunberg* (1966), 71 Ill. App. 2d 22, 217 N.E.2d 463.) Allowing an insurer to circumvent its contractual obligation to defend an insured by simply paying the policy limits to a tort plaintiff or tendering the policy limits to the court is clearly contrary to this rule, as it would transform the duty to defend from one superior to one equal or subordinate to the obligation to indemnify. We hold that under the terms of Country Casualty's policy wherein the insurer promises to "defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy," it must afford a defense for the insured "regardless of the amount of damages claimed or the tender of the limits of liability so long as part of the claim is payable under the policy." *Landando*, 292 F. Supp. 975, 977; see *Simmons v. Jeffords* (E.D. Pa. 1966), 260 F. Supp. 641.

■ The Country Casualty policy in the instant case affords us an alternative reason for holding that the payment of the policy limits to the tort plaintiff did not discharge the insurer of its obligation to defend plaintiff Conway. As previously stated the policy provides that "[t]he Company shall not be obligated to pay any claim or judgment or to defend any suit or prosecute or maintain any appeal after the applicable limits of the Company's liability have been exhausted by payment of any judgments or settlements." By expressly relieving the insurer of the duty to defend in the situation where payment of the policy limit has been made as a result of a settlement or adverse judgment the policy drafters have imposed upon the insurer the duty to defend in all other situations (*expressio unius est exclusio alterius*). Here, the $10,000 paid to tort plaintiff Assalley by the insurer, which amount constituted the bodily injury liability limits, was not the payment of a judgment or settlement. No settlement was reached until Ms. Assalley executed a release in exchange for the payment of the additional $10,000 by Conway on January 3, 1977. As a result, under the plain and unambiguous terms of the policy, the insurer remained obligated to defend Conway despite its payment of the bodily injury liability limits to tort plaintiff Assalley.

Our disposition of the first issue raised on appeal in favor of plaintiff Conway leads us to the second issue presented by the insurer for our consideration, *i.e.*, whether the trial court erred in awarding to plaintiff as damages the entire amount expended by him in obtaining a settlement of the tort action. Because the insurer in this case had a contractual obligation to afford a defense for Conway, notwithstanding the payment of the bodily injury liability limits to the tort plaintiff, in refusing to defend the insured the defendant unjustifiably breached its contract of insurance. The consequences of such a breach were outlined in *Sims v. Illinois*

*National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123; " 'By its unjustified refusal to defend an action against the insured, an automobile liability insurer becomes subject to the following new and positive obligations: (1) liability for the amount of the judgment rendered against the insured or of the settlement made by him; (2) liability for expenses incurred by the insured in defending the suit; (3) liability for any additional damages traceable to its refusal to defend.' " (43 Ill. App. 2d 184, 194, 193 N.E.2d 123, 127, quoting 7 Am. Jur. 2d *Automobile Insurance* §167 (1963) (now 7 Am. Jur. 2d *Automobile Insurance* §396 (1980)); accord, *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914; Annot., 49 A.L.R.2d 694 (1956).) " 'The first and most obvious of these positive obligations created by an insurer's unjustified refusal to defend is its obligation to pay the amount of the judgment rendered against the insured or of any settlement made by the insured of the action brought against him by the injured party.' " *Sims*, 43 Ill. App. 2d 184, 194-95, 193 N.E.2d 123, 127-28, quoting 7 Am. Jur. 2d *Automobile Insurance* §167 (1963) (now 7 Am. Jur. 2d *Automobile Insurance* §396 (1980)); *Aetna Casualty.*

■■ In Illinois, the law is unsettled with regard to whether the unjustified refusal to defend exposes the insurer to liability for the entire judgment or settlement, or whether the extent of the insurer's liability is marked by the policy limits. (See *Aetna Casualty & Surety Co. v. Dichtl* (1979), 78 Ill. App. 3d 970, 398 N.E.2d 582.) The Fourth Division of the First District Appellate Court has held that an insurer cannot be held liable for the amount of a judgment or settlement in excess of the policy limits unless the refusal to defend is made in bad faith. (*Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 387 N.E.2d 700; *Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 386 N.E.2d 529.) On the other hand, this district has stated that in cases where there is an unjustified refusal to defend on the part of the insurer constituting a breach of the contract of insurance, damages in the full amount of the judgment or settlement in excess of the policy limits may be awarded where the insured has suffered or may suffer actual damages in such an amount, or "to the extent that rights are reserved as against the insured." (*Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 949, 352 N.E.2d 60, 64.) Although our statements in *Elas* are admittedly *dicta* (*Reis*, 69 Ill. App. 3d 777, 790, 387 N.E.2d 700, 710), we decline to depart from them here. The facts of this case do not warrant an abandonment of *Elas* for the general rule propounded in *Reis* and *Associated Indemnity* because damages in excess of the policy limits would be proper no matter which rule was followed. With regard to the general rule, most certainly the refusal of the insurer to afford a defense after paying the policy limits to the tort plaintiff in the

absence of an adverse judgment or settlement, when by the very terms of the policy such action can be taken only when the policy limits are exhausted by payment of a judgment or settlement, reflects bad faith. Accordingly, we affirm the action of the trial court in assessing to the insurer as damages not only the reasonable attorneys' fees incurred by the insured in terminating Ms. Assalley's lawsuit, but also the $10,000 it personally cost him in obtaining a settlement, even though such amounts exceed the personal injury liability limits of the policy. These damages are the direct and proximate consequences of the insurer's wrongful and unjustified breach of the insurance contract.

■■ The final issue raised by the defendant insurer is whether $2,167.72, representing prejudgment interest, was erroneously awarded to the plaintiff. Section 2 of the Interest Act, which governs the imposition of prejudgment interest provides that "[c]reditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing * * *." (Ill. Rev. Stat. 1979, ch. 74, par. 2.) Despite defendant's contention to the contrary, an insurance policy has been considered to be an "instrument of writing" for the purpose of awarding pre-judgment interest. (*Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.* (1977), 45 Ill. App. 3d 401, 359 N.E.2d 797.) Accordingly, prejudgment interest may be awarded on a liquidated or readily ascertainable sum due and owing under a policy of insurance. The interest is computed from the date the sum becomes due, as that is when the debtor-creditor relationship which created the basis of the prejudgment interest statute is formed. (*Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.; Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 323 N.E.2d 73.) In the instant case, the $12,386.95 personally expended by Conway to obtain a release from the tort plaintiff and to pay the attorneys' fees incurred by him in settling the Assalley lawsuit represents a fixed and determinable sum due and owing to him by the insurer under the policy of insurance. The insurer's wrongful breach of its contractual obligation to afford a defense for the insured exposed it to liability for this amount. (See, *e.g., Sims.*) The trial court held that the date this amount became due and owing was January 2, 1977, about two years subsequent to the refusal to defend and a reasonable time after the insured had made a demand upon the insurer to pay the tort plaintiff $10,000 in exchange for the execution of a release, and after Conway's counsel submitted its bill for $2,386.95 in legal fees to the defendant. As we interpret the Interest Act, we find no error in its application to the instant case, nor in the computation of the amount of prejudgment interest to be awarded to plaintiff.

The applicability of the Interest Act notwithstanding, the awarding

of prejudgment interest is proper here. As previously discussed, among the consequences of a breach of a contract of insurance arising from an unjustified refusal to defend an insured, beyond liability for the amount of the judgment or settlement and for the insured's expenses in defending the tort action, is liability of the insurer " 'for any additional damage traceable to its refusal to defend.' " (*Sims*, 43 Ill. App. 2d 184, 194, 193 N.E.2d 123, 128.) In awarding prejudgment interest to plaintiff, in a supplemental opinion of July 2, 1980, the trial court reasoned "the insurer had the use of the money during its period of wrongful refusal to defend, and the insured has been deprived of that money, after having been placed in a situation where he was forced to make the settlement and incur the attorney's fees." We are in total agreement with this observation. The insurer's refusal to defend resulted in direct financial loss to the plaintiff in that he was unable to divert the $12,386.95 for some other purpose. The imposition of 5% prejudgment interest is at least some minimal recoupment for the additional damages plaintiff sustained in being unable to use these funds as he saw fit.

For the foregoing reasons, we affirm the judgment of the circuit court of La Salle County in all respects.

Judgment affirmed.

SCOTT, P. J., and ALLOY, J., concur.