Sandra A. GROSS, Plaintiff-Respondent,

v.

LLOYDS OF LONDON INSURANCE COMPANY, a foreign corporation, The Experimental Aircraft Association, Inc., a Wisconsin corporation, Imperial Casualty & Indemnity Company, a foreign corporation,† and Milwaukee County, Defendants-Respondents,

Dr. Ivan D. FRANTZ, Defendant and Third-Party Plaintiff-Appellant-Petitioner,

PIPER AIRCRAFT CORPORATION,
Third-Party Defendant-Respondent.

Supreme Court

*No. 83–664. Argued October 2, 1984.—Decided November 27, 1984.*

(Also reported in 358 N.W.2d 266.)

---

† Motion for reconsideration pending. This motion was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

80

For the petitioner there were briefs by *J. Ric Gass, Mary J. O'Connor* and *Kasdorf, Dall, Lewis & Swietlik, S.C.,* Milwaukee, and oral argument by *Mr. Gass.*

For the defendant-respondent, Imperial Casualty and Indemnity Company, there was a brief by *Mark A. Peterson, Michael R. Wherry* and *Mulcahy & Wherry, S.C.,* Milwaukee, and *Richard E. Mueller, Alvin E. Domash* and *Lord, Bissell & Brook,* of counsel, Chicago, Illinois, and oral argument by *Mr. Peterson* and *Mr. Domash.*

WILLIAM G. CALLOW, J.  This is a review of a decision[1] of the court of appeals affirming an order of the circuit court for Milwaukee county, Judge Harold B. Jackson, Jr., allowing an insurance company to deposit in court a check representing the limits of its coverage under a liability policy, thereby relieving the company of its defense in an action filed against its insured and dismissing the company from the action. We reverse the court of appeals.

The issue presented for review is whether an insurer may terminate the defense of its insured by tendering its policy limit for settlement pursuant to the terms of the liability insurance policy.

On July 30, 1982, Dr. Ivan D. Frantz submitted an application to the Imperial Casualty and Indemnity Company (Imperial) for the renewal of a policy of aircraft bodily injury liability insurance.[2]  The application was in the form of a conditional insurance binder,[3] and it stated that the limits of liability for bodily injury were $100,000 for each person and $300,000 for each occurrence. The policy itself was issued on August 11, 1982.

On August 5, 1982, at The Experimental Aircraft Association's annual fly-in at Oshkosh, Wisconsin, an unoccupied Piper aircraft, owned by Frantz, rolled into

[1] *Gross v. Lloyds of London Insurance Co.*, 118 Wis. 2d 367, 347 N.W.2d 899 (Ct. App. 1984).

[2] Dr. Frantz was a Minnesota resident, and the policy was issued in Minnesota. The accident and resulting lawsuit took place in Wisconsin. This case presents issues of first impression under both Minnesota and Wisconsin law, and we conclude that the result reached would be the same no matter which state's law was applied.

[3] A binder is a written instrument which binds the insurance company to pay for losses which occur pending action upon the application and actual issuance of a policy. 2 G. Couch, *Cyclopedia of Insurance Law*, sec. 14.26 at 48 (Rev. 2d ed. 1984).

the tent occupied by Sandra Gross, seriously injuring her. Imperial investigated the accident and concluded that Gross's damages for injuries could greatly exceed the policy limits of $100,000. On October 5, 1982, Imperial forwarded a check for $100,000 along with a partial release and indemnification agreement to Gross's attorney in an attempt to settle the claim. The proposed release was a standard *Pierringer*-type release, *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963), which would have released both Imperial and Frantz from any liability resulting from the accident. Gross rejected payment of the policy limits and refused to execute the release. On October 18, 1982, Gross commenced an action in Milwaukee county circuit court seeking damages of $11,000,000 against Imperial, Frantz, The Experimental Aircraft Association, and Lloyds of London (the EAA's insurer).

On December 3, 1982, Imperial filed a motion in the trial court seeking permission to pay its policy limit into court and seeking to be relieved from any further obligation to defend Frantz under the terms of the insurance policy. The policy issued to Frantz contained the following language:[4]

"Imperial . . . [a]grees . . .
". . . .

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
"A. bodily injury, sickness or disease, including death
. . . .
". . . .

---

[4] The policy was not issued until August 11, 1982, four days after the accident. The binder which Dr. Frantz received at the time he made application for renewal of the policy contained no statement regarding Imperial's reserving the right to terminate its defense of the insured upon payment or tender of the policy limits.

"caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft, and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient, *but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements or after such limit of the Company's liability has been tendered for settlements."* (Emphasis added.)

The trial court entered an order allowing Imperial to pay its policy limit into court and relieving it of any further obligation to defend Frantz in the litigation. The court of appeals affirmed the trial court's order, stating that the plain language of the policy envisioned that the company could be relieved of its obligation to defend its insured either upon payment of a judgment or settlement in the amount of the policy limit or upon tender of the policy limit to the court. 118 Wis. 2d at 371–72. In addition, the court of appeals found that allowing the insurer to be relieved of its obligation to defend the insured upon payment of the policy limit into court was not contrary to public policy. Id. at 376. While the policy at issue was a renewal of a previously issued policy, the original policy of insurance was not made part of the record. The court of appeals did not comment on the fact that, at the time of the accident, Frantz had not yet received the policy and nothing in the record showed that Frantz had any notice of Imperial's right to terminate its defense upon tender of the policy limits for settlement. Frantz petitioned this court for review, and we granted the petition.

The issue we decide is whether a provision in a liability insurance policy allowing the insurer to terminate

the defense of its insured by tendering the policy limit for settlement is enforceable. This issue involves a question of law, and this court need not give special deference to the determination of lower courts. *LePoidevin v. Wilson*, 111 Wis. 2d 116, 121, 330 N.W.2d 555 (1983).

Policies of liability insurance impose two duties on the insurer with respect to the insured—the duty to indemnify and the duty to defend. 7C J. Appleman, *Insurance Law and Practice*, sec. 4684 at 80–82, (Berdal ed. 1979). The clauses in liability policies defining these two duties have undergone a number of changes over the years. Prior to 1966 clauses defining the insurer's duty to defend were contained in a different section of the policy than clauses defining the insurer's duty to indemnify. *See* N. Risjord and J. Austin, *Automobile Liability Insurance Cases*, (Standard Provisions and Appendix) at 219 (1964 & Supp. 1974). The pre-1966 policy form contained the following language with respect to the insurer's duties to indemnify and defend:

"[The company agrees]
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay . . .
". . . .

"and the company shall defend any suit alleging such bodily injury or property damage and seeking damages *which are payable under the terms of this policy,* even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient." (Emphasis in original.) E. Van Vugt, *Termination of the Insurer's Duty to Defend by Exhaustion of Policy Limits,* 44 Ins. Couns. J. 254, 257 (1977).

It was not clear under policies containing this type of language whether the insurer's duty to defend the insured would be terminated once the policy limits had been paid out.

In 1966 the standard form liability policy was revised, and the insurer's duties to indemnify and defend were stated in the same paragraph. C. Atkins, *Insurer's Obligation to Defend After Exhaustion of Policy Limits,* 33 Ins. Couns. J. 250, 251 (1966). The 1966 policy language directly defined the insurer's right to terminate the defense of its insured as follows:

> "The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay . . . *but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.*" (Emphasis added.) 1 R. Long, *The Law of Liability Insurance,* sec. 5.12 at 5–74 (1984).

The 1966 revisions were meant to clarify when the insurer's duty to defend the insured has been satisfied by providing that the duty to defend ceases after the policy limits are exhausted either by payment of judgments or settlements. 7C J. Appleman, *supra,* sec. 4682 at 29. Despite the clear policy language, Appleman cautions that the insurer's duty to defend the insured may continue even after the policy limits have been exhausted:

> "Despite the 1966 and subsequent revisions, the primary insurer may not walk away from the insured by paying relatively low limits into court and abandon the insured with a substantial judgment simply because the cost of appeal or other handling may be formidable. The insured's interest may demand continued protection despite threatened exhaustion of the primary limits." *Id.* at 36 (footnote omitted).

In its opinion, the court of appeals reasoned that Appleman's caveat spoke to policies lacking the "tendered for settlements" language present in the Imperial policy. 118 Wis. 2d at 374. The language contained in

the Imperial policy permitting the insurer to terminate its duty to defend once the policy limits have been tendered for settlement (as well as when the limits have been exhausted by payment of judgments or settlements) is a further revision in the language of liability insurance policies which first appeared several years ago. We conclude the "payment of judgments or settlements" language in the 1966 policy form contemplates payment upon the conclusion of the litigation or termination of the claim by settlement. The "tendered for settlements" language added by the insurer contemplates payment prior to the conclusion of the litigation or settlement of the claim against the insured. The addition of the "tendered for settlements" language is persuasive evidence of a substantial change in the obligation of the insurer to defend. Not only is the enforceability of such a provision a matter of first impression in Wisconsin, but no reported cases from other jurisdictions have yet construed a like provision.

While numerous cases have dealt with the language contained in the older policy forms, there is a split of authority in those cases as to whether an insurer may be relieved of its obligation to defend the insured after the policy limits have been exhausted. 1 R. Long, *supra,* sec. 5.12 at 5–69; Annot., 27 A.L.R. 3d 1057 (1969). It has been stated that the insurer's duty to defend is broader than the duty to indemnify, *Val's Painting & Drywall, Inc. v. Allstate Insurance Co.,* 53 Cal. App. 3d 576, 584, 126 Cal. Rptr. 267 (1975) ; *Conway v. Country Casualty Insurance Co.,* 97 Ill. App. 3d 768, 773, 423 N.E.2d 559 (1981), and that regardless of the exhaustion of the policy limits, the insurer should not be permitted to withdraw from the defense in a manner that would prejudice the rights and interests of the insured. 1 R. Long, *supra,* sec. 5.12 at 5–72. Alternatively, some courts have stated that insurers

are only obligated to defend insureds up to the limits of coverage afforded by the policy and that exhaustion of the policy limits also terminates the duty to defend. *Denham v. La Salle-Madison Hotel Co.,* 168 F.2d 576, 584 (7th Cir. 1948). "Defendant's theory (that the insurer's obligation to defend survives the payment of the policy limit) would produce the incongruous situation that plaintiff would have a continuing obligation to defend, notwithstanding its obligation to pay has been exhausted." *Id.* Courts faced with such questions have stated that "each case involving a promise to defend must be considered independently on the basis of the particular language in the contract at issue." *Landando v. Bluth,* 292 F. Supp. 975, 976 (N.D. Ill. E.D. 1968).

When construing language covering an obligation such as the insurer's duty to defend the insured, courts must look to the reasonable expectations of the insured. *Kocse v. Liberty Mutual Insurance Co.,* 159 N.J. Super. 340, 345–46, 387 A.2d 1259 (1978). Both parties concede that the provision in the Imperial policy terminating the insurer's duty to defend once the policy limits have been tendered for settlement was a substantial deviation from the defense provisions contained in previous policy forms. The "tendered for settlements" language was a supplement at the end of the sentence contained in older policy forms which provided that "the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements." The new language was not highlighted in any way so as to put insureds on notice that the standard form liability policy, which had been in use in the insurance industry since 1966, had been changed with respect to the insurer's duty to defend. We believe the reasonable expectations of insureds would be that the policy language in use by the industry since

1966 would be present in new policies unless they were specifically given notice of a change.

We have previously stated that an insurer cannot rely on a standard form for its protection when the provisions relied upon are not made clear to the insured. *Roeske v. Diefenbach,* 75 Wis. 2d 253, 261 n. 2, 249 N.W.2d 555 (1977). Because any limitation on the insurer's duty to defend is in the nature of an exclusion, the defense coverage clause must clearly express the limitation. E. Van Vugt, 44 Ins. Couns. J. at 255. Frantz did not receive the renewal policy containing the exclusionary language until after the accident. His original policy with Imperial was not made a part of the record, and the provisions contained in the original policy regarding defense of insureds were not before the court. The binder Frantz received when he applied for a renewal of the previously issued policy made no mention of Imperial's duty to defend the insured in the event of a loss. Even though the renewal policy itself did contain the new "tendered for settlements" language, there is nothing in the record before us to show that Frantz had received any notice of the "tendered for settlements" language at the time of the accident. The only document he had received from Imperial was the binder. Because the binder was silent concerning Imperial's obligation to defend, the reasonable expectation of an insured would be that the standard industry practice would apply. Because the "tendered for settlements" language was a substantial change from past industry practice and because Frantz had received no notice at the time of the accident that Imperial could terminate its defense efforts upon tender of the policy limits, we hold that Imperial's tender of the policy limits into court does not relieve it of its duty to defend Frantz in the lawsuit.

In order for an insurer to be relieved of its duty to defend upon tender of the policy limits, the "tendered for settlements" language must be highlighted in the policy and binder by means of conspicuous print, such as bold, italicized, or colored type, which gives clear notice to the insured that the insurer may be relieved of its duty to defend by tendering the policy limits for settlement. Provisions regarding the insurer's duty to defend are typically contained in liability insurance policies, and if insurers elect to adopt the "tendered for settlements" language, they must highlight it in the policy. In many instances, as in this case, the insured receives a binder at the time he applies for coverage which informs him that coverage will be in effect pending issuance of the policy. Binders are an integral part of the insurance industry, and insureds rely on binders to afford them the same coverage they would have under an issued policy. In cases where the insurer issues a binder and the policy to be issued will contain the "tendered for settlements" language, the binder must also contain that language in conspicuous print, and the insured must be furnished with a copy of the binder. Insureds will thus be put on notice that they are buying a policy of indemnity and a defense only up to the point where the insurer tenders the policy limits for settlement and that the insurer's duty to defend ceases once such a tender has been made. Once insureds have been given notice by the insurer of a limited duty to defend, they may choose to afford themselves greater protection in the defense of claims by increasing the amount of their policy limits or seek a policy which provides for unlimited defense. Insurers may terminate their duty to defend insureds by tendering the policy limits, but they may only do so if the insureds receive adequate notice as outlined in this opinion.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

HEFFERNAN, CHIEF JUSTICE (concurring). I agree with the majority's holding that the provision in the Imperial policy, allowing the insurer to terminate its defense of its insured by tendering the policy limit for settlement, is not enforceable because the insured, Frantz, had insufficient notice of the policy provision. I do not join in the dicta concerning the public policy of allowing insurers to terminate their obligation to defend nor in the *sub silentio* implication that, had proper notice been given, the provision in question would be enforceable. These public policy issues were neither considered nor decided by this court and, under the rationale of the court, are not necessary for the disposition of the case.

I am authorized to state that JUSTICE WILLIAM A. BABLITCH joins in this concurrence.

SHIRLEY S. ABRAHAMSON, J. (concurring). I agree with the majority that this case should be remanded to the circuit court. I would remand, however, for an evidentiary hearing on the issue of Dr. Frantz's notice, knowledge, or expectations.[1] The majority makes a finding of fact that "Frantz had received no notice at the time of the accident that Imperial could terminate its defense efforts upon tender of the policy limits." (P. 88, *supra.*) Appellate courts cannot make findings of fact. *Wurtz v. Fleischman,* 97 Wis. 2d 100, 109, 293 N.W.2d 155 (1980).

---

[1] The majority's application of the principle of reasonable expectations is not entirely clear. The principle has more than one meaning. *See Rodman v. State Farm Mutual Auto. Ins. Co.,* 208 N.W.2d 903, 905–908 (Iowa 1973).

I cannot join the majority in its adoption of a "readability" and "notice" rule for binders and insurance policies. (Majority opinion, p. 89.) These are matters for the legislature and the commissioner of insurance. Sec. 601.41, Stats. 1981–82. Both the Wisconsin and Minnesota legislatures have adopted readability statutes. Sec. 631.22(2), 1981–82, provides that an insurer may provide a consumer insurance policy only if the policy is "written in commonly understood language, legible, appropriately divided and captioned by its various sections and presented in a meaningful sequence" and that the Commissioner of Insurance shall promulgate rules establishing standards for the determination of compliance with the readability statute.[2] Prescribing the form of insurance policies is not a matter for this court.

Nor can I join either of the concurrences. I do not agree with Chief Justice Heffernan's or Justice Ceci's interpretation of the majority opinion on the public policy issue that the parties have presented to this court. The issue presented is whether public policy precludes an insurer from enforcing a provision in the policy allowing the insurer to terminate the defense of its insured by tendering its policy limit for settlement. As I read the opinion, the majority does not decide the public policy issue—either in dicta, as the Chief Justice contends, or in holding, as Justice Ceci asserts.

The majority has merely reasoned that highlighted or boldface language is *necessary* for an insurer to be relieved of his duty to defend by relying on a tendered for settlements clause in the insured's contract; it has *not* concluded that this is a *sufficient* condition. The public policy question, while argued by the parties, is not discussed in the majority opinion. Indeed the whole point of the majority opinion seems to be to avoid the public policy question entirely.

[2] I do not mean to imply that Wisconsin law governs.

LOUIS J. CECI, J. (concurring). I agree with the majority's holding that it is not against public policy for an insured to terminate its duty to defend by tendering its policy limits. Contracts of insurance rest upon and are controlled by the same principles of law that are applicable to other contracts. The parties to an insurance contract are free to contract as they see fit, and the extent of liability of an insurer is governed by the language of the contract. *See, McPhee v. American Motorists Insurance Co.,* 57 Wis. 2d 669, 673, 205 N.W. 2d 152 (1973).

I also agree with the majority's ruling that an insured is entitled to notice when new policy language is added after an insured expresses a desire to renew a previous policy. I feel compelled to concur, however, because I disagree with the guidelines set out in the majority opinion as to the manner in which an insured must be notified of language changes in the policy. The policy in question was issued and received in Minnesota and approved by the Minnesota Commissioner of Insurance. The majority, in effect, is instructing foreign insurance companies how to write policies of insurance for their own residents. The issue of whether an insured has been properly notified of an insurer's intent to limit its duty to defend by tendering the policy limits should be decided on a case-by-case basis and not under the stringent rules laid out in the majority opinion.

I would also remand this case to the trial court to determine whether Dr. Frantz's prior policy contained the disputed language and, thus, whether Dr. Frantz was in fact put on notice that his insurer's duty to defend could be terminated by tendering the policy limits. The majority is assuming that the limiting language was not in Dr. Frantz's previous policy, and this assumes a fact not before this court.