## EMPLOYERS REINSURANCE CORPORATION, Plaintiff,

### v.

## ADMIRAL INSURANCE COMPANY, Defendant.

### Civ. A. No. 91–C–971.

United States District Court,
E.D. Wisconsin.

June 8, 1993.

Christine K. Nelson, Nelson, Dries & Zimmerman, Brookfield, WI, for plaintiff.

Timothy J. Strattner, Schellinger & Doyle, Brookfield, WI, for defendant.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

On August 9, 1991, plaintiff Employers Reinsurance Corporation ("ERC") commenced this action in the Circuit Court for the County of Milwaukee, Wisconsin. The complaint alleges that defendant Admiral Insurance Company ("Admiral") owes attorney fees and costs which ERC paid as an excess insurer. On September 9, 1991, this action was removed to this court.

This court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1) because this action is between citizens of different states and the amount in controversy exceeds $50,000. As such, this court must apply the substantive law of Wisconsin to this action. *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Presently before this court are the parties' cross-motions for summary judgment. For the reasons below, this court denies ERC's motion and grants Admiral's motion.

### FACTS [1]

Admiral provided National Risk Underwriters ("NRU") with insurance agent errors and omissions liability insurance, effective in January 1981. The policy (and subsequent renewals) provided that both the limits and the deductible would apply to both loss and expense. ERC provided NRU with excess insurance over Admiral's policy.

---

1. The facts are taken from the parties' stipulated facts, filed July 6, 1992.

NRU was the managing general partner, as governed by a contract, for Occidental Fire & Casualty Company of North Carolina ("Occidental"). In March 1985, Occidental terminated the contract with NRU and withheld certain payments which NRU claimed were due. NRU then made a demand for arbitration pursuant to the contract. In January 1986, Occidental counter-claimed against NRU, alleging that NRU had been negligent under the contract and was liable to Occidental for damages. Both Admiral and ERC received notice of Occidental's claim.

In July 1986, formal arbitration proceedings began. In March 1987, NRU's counsel wrote Admiral and ERC to advise them of the arbitration's status, and ask them for their position on coverage and costs of defense.

The next month, Admiral accepted responsibility, up to its policy limits, for NRU's defense of Occidental's counter-claim. ERC received notice Admiral's position. Admiral and NRU initially did not agree on the allocation of arbitration expenses given the two claims involved—the affirmative claim by NRU and Occidental's counter-claim against NRU. After negotiating, Admiral agreed to pay sixty percent and NRU agreed to pay forty percent of the arbitration expenses. NRU subsequently submitted bills to Admiral, of which Admiral paid sixty percent.

The arbitrators rendered a decision in April 1988, awarding NRU $1,191,497 on its claim and Occidental $600,000 on its counter-claim. Litigation in federal court then commenced regarding various issues raised by the arbitrators' decision. On September 14, 1988, NRU submitted a final bill to Admiral for litigation expenses. No further demand was made by NRU against Admiral.

After Admiral paid $500,000 toward arbitration and litigation expenses, NRU made various demands on ERC for indemnity on Occidental's counter-claim and for defense costs. ERC denied that it had an obligation to defend. In October 1990, NRU and ERC reached a settlement regarding expenses for the continued litigation between NRU and Occidental and for payment of Occidental's counter-claim. NRU assigned its rights against Admiral with respect to the claim for a continued defense obligation to ERC.

## ANALYSIS

■ The factual record on summary judgment consists only of sworn testimony based upon personal knowledge; conclusory allegations, whether contained in pleadings or set forth in affidavits, are excluded. Fed. R.Civ.P. 56(e); Fed.R.Evid. 602; *Koclanakis v. Merrimack Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir.1990). The parties have filed cross-motions for summary judgment and stipulated facts, thereby agreeing that the issues presented in this action may be resolved at this stage of the proceedings. The issue before this court is whether Admiral's $500,000 payment to NRU for arbitration and litigation expenses relieved it of a duty to defend NRU. Admiral's policy provisions on coverage provide:

1. **Professional Liability:** To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages by reason of any negligent act, error or omission in professional services rendered, or which should have been rendered, by an Insured, or by any other person for whose acts the Named Insured is legally liable, arising out of the conduct of the Named Insured's business as described in the Declarations.

. . . .

2. **Defense, Settlement, Supplementary Payments:** As respects such insurance as is afforded by the other terms of this policy, the Company shall:

(a). defend in his name and behalf any suit against the Insured alleging damages arising from, or connected with, acts, errors, omissions, even if such suit is groundless, false or fraudulent, but the Company shall have the right to make such investigation and negotiation of any claim or suit as may be deemed expedient by the Company;

(b) pay all premiums on bonds to release attachments for any amount not in excess of the limit of liability of the policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured

in any suit, all expenses incurred by the Company, all interest accruing after entry of judgment until the Company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon;

(c) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the Company's request, except amounts paid in settlement of any legal liability insured under Coverage 1., which liability shall be governed by the limit of liability stated in the Declarations.

The Company shall not be obligated to pay any claim, judgment or expenses, nor to defend any suit or claim after the applicable limit of liability has been exhausted by payment of judgments or settlements.

(Admiral Policy at 1–2.)

The "Limit of Liability" section of Admiral's policy provides:

**1. Limit of Liability:** Regardless of the number of (a) Insureds under this policy, (b) persons or organizations who sustain loss or (c) claims made or suits brought against the Insured, the liability of the Company hereunder shall not exceed in the aggregate the sum stated in the Declarations for all claims and expenses under this insurance (COVERAGES 1. and 2.)

(Admiral Policy at 3.)

ERC argues that Admiral's $500,000.00 payment did not release Admiral from the duty to defend, and if Admiral had honored that duty, no demand by NRU for ERC to defend would have been made. ERC cites cases which have held that the language "payment of judgments or settlements" obligates an insurer to continue to defend until payment after either a judgment or settlement of the claim against the insured is made. Since there was no settlement of the dispute between NRU and Occidental when Admiral made the payment, ERC claims that Admiral was not relieved of its duty to defend NRU. Admiral argues, on the other hand, that its policy provided for two separate coverages for indemnity and defense, either of which are subject to Admiral's limit of liability.

The most relevant Wisconsin case is *Gross v. Lloyds of London Ins. Co.*, 121 Wis.2d 78, 358 N.W.2d 266 (1984). In *Gross*, the court reversed a decision which allowed an insurance company to pay its policy limits and be dismissed from an action.

The court discusses pre–1966 standard policy forms which contained separate sections regarding duty to indemnify and duty to defend, stating that it "was not clear under policies containing this type of language whether the insurer's duty to defend the insured would be terminated once the policy limits had been paid out." *Id.* at 84, 358 N.W.2d 266. The policy in *Gross*, however, did not contain two separate clauses, but had one paragraph regarding duty to indemnify and defend. The policy additionally contained, in the same paragraph, the language "the Company shall not be obligated to ... defend any suit ... after such limit of the Company's liability has been tendered for settlements." *Id.* at 85, 358 N.W.2d 266. The court focused on the effect of this language, and concluded that "[i]nsurers may terminate their duty to defend insureds by tendering the policy limits, but they may only do so if the insureds receive adequate notice [that the insurer may be relieve of its duty to defend by tendering the policy limits]...." *Id.* at 89, 358 N.W.2d 266. Because there was no evidence that the insured had notice of this provision, the court held that the insured could not be bound by the provision.

■ A court must look to the reasonable expectations of the insured, *Gross* at 87, 358 N.W.2d 266, and attempt to ascertain the parties' true intentions. *Kaun v. Indus. Fire & Casualty*, 148 Wis.2d 662, 669, 436 N.W.2d 321 (1989). In making this determination, the parties' conduct can be "most persuasive" when construing an insurance contract. *D'Angelo v. Cornell Paperboard Products Co.*, 59 Wis.2d 46, 50, 207 N.W.2d 846 (1973). Any doubt about an insurer's duty to defend must be resolved in the insured's favor. *Shorewood School Dist. v. Wausau Ins.*, 170 Wis.2d 347, 364, 488 N.W.2d 82 (1992).

■ *Gross*'s holding that the insurer in that case could not pay its limits prior to a settlement or judgment is not applicable to this case. Here, there is a policy which contains separate provisions for indemnity and defense. Admiral's liability was limited

for either coverage. In this case, Admiral and ERC agreed that "both the limits and the deductible would apply to both loss and expenses." (Stipulated Facts ¶ 3.) "At all times, both Admiral and NRU understood and agreed that Admiral's position was that liability for the expenses of the arbitration, including attorney's fees, was subject to the limit of liability in its policy, to wit, $500,000." (Stipulated Facts ¶ 16.)

NRU understood Admiral's limit, as evidenced by its final bill to Admiral, where NRU acknowledged that "[a]pplication of the remaining Admiral balance of $21,407.61 towards its share of these statements would exhaust the policy limits and the remainder of the outstanding and future fees and expenses are the responsibility of NRU and the excess carrier." (Ex. F to Stipulated Facts.)

Admiral also argues that even if it had a continued duty to defend, it was relieved of this duty by NRU's consent. *Samply v. Integrity Ins. Co.,* 476 So.2d 79 (Ala.1985). ERC does not answer this argument.

This court concludes that Admiral had no duty to defend NRU once it paid the $500,-000.[2]

**IT IS THEREFORE ORDERED** that plaintiff Employers Reinsurance Corporation's July 29, 1992 motion for summary judgment is DENIED.

**IT IS FURTHER ORDERED** that defendant Admiral Insurance Company's July 31, 1992 motion for summary judgment is GRANTED and this action is DISMISSED.

---

2. Because this court concludes that Admiral had no further duty to defend, it will not address Admiral's argument that there has been an accord and satisfaction regarding the dispute between NRU and Admiral regarding coverage. An accord and satisfaction would constitute a defense to a claim by NRU regarding coverage.

*Flambeau Prods. v. Honeywell Systems,* 116 Wis.2d 95, 112, 341 N.W.2d 655 (1984). Likewise, this court need not determine whether ERC has an independent cause of action against Admiral, beyond its claims against Admiral which arise out of NRU's rights which were assigned to ERC.