DOYLE BROWN AND COLEEN B. BROWN v. LUMBERMENS MUTUAL CASUALTY COMPANY AND GENERAL MOTORS CORPORATION

No. 8722SC426

(Filed 21 June 1988)

1. Limitation of Actions § 4.2; Sales § 22— design defect claim—statute of repose

Plaintiffs' claim against an automobile manufacturer for defective design of the brakes on plaintiffs' automobile was barred by the six-year statute of repose of N.C.G.S. § 1-50(6) (1983) where the complaint was filed in October 1986 and stated that the automobile was purchased in December 1979.

Brown v. Lumbermens Mut. Casualty Co.

**2. Fraud § 9— fraudulent concealment by automobile manufacturer—insufficiency of complaint**

Plaintiffs' complaint was insufficient to state a claim against defendant automobile manufacturer for fraudulent concealment of defects in the braking system of plaintiffs' automobile where plaintiffs alleged facts showing that they knew the brakes did not work properly prior to a collision and the alleged misrepresentation by defendant thus did not actually deceive plaintiffs.

**3. Fraud § 9— automobile manufacturer—false promise to provide counsel for plaintiffs—statement of claim for fraud**

Plaintiffs' complaint was sufficient to state a claim against defendant automobile manufacturer for fraud in expressly misrepresenting to plaintiffs that it would provide counsel for plaintiffs to defend an action against them arising out of an automobile collision after plaintiffs' liability insurer paid the limits of its coverage and discharged counsel it had hired to defend plaintiffs.

**4. Limitation of Actions § 8.3— false promise to provide counsel—claim against automobile manufacturer—statute of repose inapplicable**

The statute of repose of N.C.G.S. § 1-50(6) was inapplicable to a claim against an automobile manufacturer for fraud in misrepresenting that it would provide counsel for plaintiffs in an action against them arising out of an automobile accident.

**5. Attorneys at Law § 3; Insurance § 100; Principal and Agent § 9— counsel employed by liability insurer—independent contractor—counsel's negligence not imputed to insurer**

A law firm employed by an automobile liability insurer to defend its insured in an action arising out of an automobile accident is an independent contractor so that alleged negligence by the law firm in defending the action is not imputable to the liability insurer.

**6. Insurance § 100— automobile liability insurance—insurer's duty to defend after paying policy limits**

A provision of an automobile liability policy stating that the insurer's duty to defend ends when its limit of liability for the coverage has been "exhausted" is ambiguous and will be interpreted to require the insurer to continue defending the insureds in a motor vehicle liability action until a settlement or judgment has been reached even though the insurer has paid its liability policy limits to the injured claimant pursuant to N.C.G.S. § 1-540.3(a).

APPEAL by plaintiffs from *DeRamus (J. D.), Judge.* Judgment entered 5 March 1987 in Superior Court, DAVIE County. Heard in the Court of Appeals 28 October 1987.

*Franklin Smith for plaintiff-appellants.*

*Parker, Poe, Thompson, Bernstein, Gage & Preston, by Irvin W. Hankins, III, for defendant-appellee Lumbermens Mutual Casualty Company.*

*Petree Stockton & Robinson, by G. Gray Wilson, for defendant-appellee General Motors Corporation.*

GREENE, Judge.

This appeal arises from the claims of plaintiffs Doyle Brown and wife Coleen ("plaintiffs" or the "Browns") alleging: (1) that General Motors Corporation ("GMC") negligently designed the brakes on plaintiffs' 1979 Cadillac, fraudulently concealed such defects and made certain other fraudulent misrepresentations; (2) that Lumbermens Mutual Casualty Company ("LMCC") was liable for the alleged negligence of attorneys it hired to defend the Browns after an accident involving their automobile; and (3) that LMCC violated the terms of its insurance policy by refusing to provide the Browns a defense after it paid the $25,000 limits of liability coverage.

LMCC moved for summary judgment and GMC moved to dismiss for failure to state a claim upon which relief could be granted. In response, the Browns amended their pleadings and introduced affidavits which tended to show Ms. Brown was driving a 1979 Cadillac owned by her husband when she collided with an automobile driven by Joan Hinson ("Hinson"). The collision injured both Hinson and her passenger. At the time of the collision, LMCC provided liability insurance coverage on the 1979 Cadillac in the amount of $25,000 per person with a total coverage of $50,000.

On 28 March 1984, Hinson sued the Browns for injuries she sustained in the collision. Pursuant to its insurance contract, LMCC employed Tuggle, Duggins, Meschan & Elrod ("Tuggle Duggins" or the "attorneys") to represent the Browns who claimed the collision was caused by GMC's defective design of the brakes on their Cadillac automobile. On 1 June 1984, Tuggle Duggins filed an answer for the Browns denying any negligence. Over the Browns' objection, the attorneys subsequently offered judgment in the amount of $25,000. Hinson refused the offer of judg-

ment and LMCC later secured a release of its own liability to Hinson in exchange for an advance payment of $25,000 pursuant to N.C.G.S. Sec. 1-540.3 (1983). After thus paying its $25,000 policy limit, LMCC elected to terminate the Browns' defense and therefore discharged Tuggle Duggins. The attorneys requested and received the permission of the court to withdraw as counsel for the Browns. A copy of the court order allowing the withdrawal was mailed to the Browns along with a letter from the attorneys informing the Browns they were no longer represented by counsel and should employ their own counsel. Although the court granted them a continuance, the Browns did not employ new counsel because they allegedly relied on GMC's representation that it would provide counsel. When the Hinson trial resumed, no counsel appeared for the Browns and a $45,000 judgment was rendered against them in May 1985. The judgment credited the Browns with the $25,000 LMCC had previously paid Hinson. Plaintiffs also allege the existence of a pending action by the other passenger injured in the Hinson collision.

The court dismissed all plaintiffs' claims as amended pursuant to a judgment which recited in part that the court granted GMC's motion to dismiss "pursuant to Rules 12 and 8 of the North Carolina Rules of Civil Procedure," and that it granted LMCC's summary judgment motion "having considered, for the purposes of ruling on the motion of [LMCC], affidavits filed in support of and in opposition to the motion . . . ." Plaintiffs appeal.

The issues presented are: I) whether plaintiffs' amended pleadings stated a claim for products liability or fraud against GMC; II) whether LMCC may be sued for the alleged negligence of the attorneys it employed to defend the Browns; and III) whether LMCC's liability policy obligated it to provide a defense for the Browns after it paid the limits of its liability coverage.

At the outset, we note plaintiffs' counsel has failed to comply with numerous rules of appellate procedure. In particular, counsel has failed to properly file exceptions under Appellate Rule 10 and instead brings forward only a "broadside" exception to the court's judgment. However, plaintiffs' notice of appeal is sufficient to raise the limited issues of law relevant to our review of Rule 12(b)(6) motions and summary judgments. *See Ellis v. Williams,*

319 N.C. 413, 355 S.E. 2d 479 (1987) (noncompliance with Appellate Rule 10(a) not fatal in summary judgment appeal). We will therefore disregard the admittedly rambling nature of counsel's brief and address plaintiffs' basic contention that the face of the record shows that neither LMCC nor GMC were entitled to judgment as a matter of law.

I

GMC moved to dismiss plaintiffs' original complaint under N.C.G.S. Sec. 1A-1, Rule 12(b)(6) on the grounds the claims alleged were barred by the applicable statute of repose, the complaint was too "prolix" under N.C.G.S. Sec. 1A-1, Rule 8 (1983) and the complaint in any event failed to state claims upon which relief could be granted. Dismissal under Rule 12(b)(6) is proper when: (1) on its face the complaint reveals no law supports plaintiff's claim; (2) on its face the complaint reveals the absence of a fact sufficient to make a good claim; and (3) some fact disclosed in the complaint necessarily defeats plaintiff's claim. *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E. 2d 222, 224 (1985); *see generally Johnson v. Bollinger*, 86 N.C. App. 1, 3-4, 356 S.E. 2d 378, 380-81 (1987).

[1]   Plaintiffs first claim against GMC arises from GMC's allegedly defective design of the brakes on plaintiffs' automobile. As the original complaint in this action was filed on 13 October 1986 and stated the automobile was originally purchased on 21 December 1979, it is apparent that plaintiffs' "design defect" claim against GMC was already barred by Section 1-50(6) which sets forth a six-year statute of repose for such actions. N.C.G.S. Sec. 1-50(6) (1983). Thus, the court properly dismissed this claim.

[2]   Plaintiffs also claim that GMC knew the braking system of the 1979 Cadillac was defective but fraudulently concealed this fact from plaintiffs. Although plaintiffs' complaint alleges GMC's "fraud," a fraudulent concealment claim on these facts is arguably also barred by Section 1-50(6). *Cf. Davidson v. Volkswagenwerk, A.G.*, 78 N.C. App. 193, 195, 336 S.E. 2d 714, 716, *disc. rev. denied*, 316 N.C. 375, 342 S.E. 2d 892 (1986) (indicating claims, including "tortious concealment" of defect, would be barred). However, we need not decide this issue since plaintiffs also allege facts showing that, despite GMC's alleged concealment, plaintiffs knew the brakes did not work properly and were defective prior to the Hinson collision. Thus, the alleged misrepresentation of fact as to the

brakes' condition did not actually deceive plaintiffs and therefore cannot support an action for fraudulent concealment. *See Watts v. Cumberland County Hospital System, Inc.,* 317 N.C. 110, 117, 343 S.E. 2d 879, 884 (1986) (fraudulent concealment in malpractice action barred since plaintiff not deceived as to fact of which she was already aware); *Cox v. Johnson,* 227 N.C. 69, 70, 40 S.E. 2d 418, 419 (1946) (one cannot be deceived by representation which he knows to be false); *see also Terry v. Terry,* 302 N.C. 77, 83, 273 S.E. 2d 674, 677 (1981).

[3]    However, plaintiffs' amended complaint also states:

> That the Plaintiffs made requests upon [GMC], its agents and employees, to pay off the judgment acquired against them by either one of the ladies injured in the automobile accident . . . and was assured by [GMC] representatives . . . that they would look into the matter and that the plaintiffs' interest would be protected. The plaintiffs were eventually referred to the Assistant Zone Manager, A. J. Laird of the Cadillac division of General Motors Corporation and . . . [were] advised that their insurance carrier [was being informed]. That after the plaintiffs were in court . . . in January, 1985, and after the attorney [provided by LMCC] was allowed to withdraw . . . and pay the $25,000 policy limits into the court, *the plaintiffs again contacted A. J. Laird in Rockville, Maryland and told him what had happened in court. At this time Mr. Laird represented to the plaintiffs that the corporate defender would make good any defective products that they had and that they stood behind and guaranteed the products for seven years and told the plaintiffs that this also applied to their 1979 Cadillac. . . . [A]fter . . . talking with Mr. Laird, the plaintiffs were assured that General Motors Corporation would provide an attorney to represent the plaintiffs in the case in Surry County arising out of the accident* . . . [Plaintiffs] have incurred an exposure above and beyond their liability coverage in one lawsuit in the amount of $20,000 plus interest and attorneys' fees in an amount exceeding $10,000. [Emphasis added.]

Plaintiffs elsewhere allege that the above actions were taken by GMC "for the specific purpose to allow time for the running of

North Carolina General Statute 1-50 . . . and [were] made with the specific intent of deceiving the plaintiffs . . ." Plaintiffs claim that, but for this representation, plaintiffs would have secured their own counsel during the continuance granted in the Hinson proceeding.

The claim above properly alleges the elements of fraud which are: "(1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Terry*, 302 N.C. at 83, 273 S.E. 2d at 677; *Johnson v. Phoenix Mutual Life Ins. Co.*, 300 N.C. 247, 255, 266 S.E. 2d 610, 616 (1980) (promissory misrepresentation may constitute fraud if made with intent to deceive and promisor did not intend to comply at time made); *see also Payne v. N.C. Farm Bureau Mutual Ins. Co.*, 67 N.C. App. 692, 696, 313 S.E. 2d 912, 915 (1984) (approving statement of fraud claim where plaintiff failed to secure other insurance coverage based on insurer's misrepresentation). Furthermore, as plaintiffs' claim sets forth the time, place and content of the representation, as well as the identity of the GMC agent who made it, plaintiffs have pled their claim with sufficient "particularity" under Rule 9(b). *See Terry*, 302 N.C. at 85, 273 S.E. 2d at 678 (time, place, identity, and content allegations are sufficient for "particularity" requirement).

[4] The bar evidenced by Section 1-50(6) is inapplicable to this particular fraud claim since plaintiffs allege they were injured by GMC's intentionally deceptive express representation that GMC would provide counsel for them: the complaint reveals this representation was allegedly made irrespective of whether the GMC brakes in fact were defectively designed or manufactured. Thus, this claim is not "based upon or arising out of any alleged defect or any failure in relation to a product . . ." under Section 1-50(6). That statute was enacted to provide a period of repose for product liability actions under Section 99B. *Bernick v. Jurden*, 306 N.C. 435, 446, 293 S.E. 2d 405, 413 (1982); *cf.* N.C.G.S. Sec. 99B-1(3) (1985) (defining "products liability action" to include actions caused by "design . . . marketing, selling [or] advertising . . ." products). This is no more a "products liability" claim barred by Section 1-50(6) than would be a claim for assault arising out of a dispute over the proper maintenance of GMC brakes.

Plaintiffs' complaint should not be dismissed under Rule 12(b)(6) unless it affirmatively appears plaintiff is entitled to no relief under any stated facts which could be presented in support of the claim. *Presnell v. Pell*, 298 N.C. 715, 719, 260 S.E. 2d 611, 613 (1979). The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claim. Given these parameters of dismissal under Rule 12(b)(6), we hold the court erroneously dismissed plaintiffs' fraud claim arising from GMC's allegedly express representation that it would defend plaintiffs' interests. Consequently, we affirm the trial court's dismissal of plaintiffs' claims against GMC for "design defects" and fraudulent concealment of those defects; however, we reverse and remand the trial court's dismissal of the remaining fraud claim noted above.

II

[5]  The bar of Section 1-50(6) had not occurred at the time Tuggle Duggins filed its 1 June 1984 answer for the Browns in the Hinson suit. Plaintiffs contend LMCC is liable for Tuggle Duggins' allegedly negligent failure either to join GMC in the Hinson lawsuit or otherwise assert a defense based on GMC's allegedly defective brakes before the statute of repose had run. Plaintiffs' correspondence with Tuggle Duggins indicates their belief that they could prove GMC's allegedly defective brakes constituted a defense to the Hinson action. Plaintiffs therefore urge that the attorneys' alleged negligence be imputed to LMCC.

However, based upon traditional agency principles and a recent decision of our Supreme Court, we hold Tuggle Duggins was an independent contractor whose negligence, if any, is not imputed to LMCC. The right to control the details of a person's work is primarily characteristic of an agency relationship rather than of that relationship between an employer and independent contractor:

Agency has been defined by this Court as the relationship which arises from 'the manifestation of consent by one person to another that the other shall act on his behalf and *subject to his control*, and consent by the other so to act.' Furthermore, 'a principal's vicarious liability for the torts of his agent depends on the degree of control retained by the principal *over the details of the work as it is being per-*

*formed.* The controlling principle is that vicarious liability arises from the right of *supervision and control.'*

*Hayman v. Ramada Inn, Inc.*, 86 N.C. App. 274, 277, 357 S.E. 2d 394, 397, *disc. rev. denied,* 320 N.C. 631, 360 S.E. 2d 87 (1987) (citations omitted) (emphasis in original). While LMCC selected Tuggle Duggins to defend the Browns and controlled the ultimate decision to settle or defend under the policy, there is nothing in the record to indicate LMCC had any control over the details of the litigation as it was being conducted by Tuggle Duggins.

Furthermore, in *Gardner v. The North Carolina State Bar,* 316 N.C. 285, 341 S.E. 2d 517 (1986), our Supreme Court considered the proposed defense of an insured by an insurer's "in-house" counsel rather than by outside counsel selected by the insurer. In holding the former practice constituted the unauthorized practice of law by the insurer while the latter did not, the Court stated:

> In petitioners' [approved] current practice, as described to this Court, it does not purport to defend or represent its insureds itself. It agrees to furnish the defense and carries out this obligation by paying an independent attorney, *assumed for the purpose of this opinion to be an independent contractor,* to represent its insureds. It also has certain contractual rights, supported by its pecuniary interest, to select this attorney and to have some control over this suit. Nevertheless, the independent attorney is the "actor" who provides legal representation for the insured.

316 N.C. at 292-93, 341 S.E. 2d at 522. (Emphasis added.) The record before us evidences only an independent "actor" relationship identical to that authorized in *Gardner.* While the *Gardner* Court was only required to assume arguendo an independent contractor relationship between that insurer and its local counsel, our own facts demonstrate no other relationship between LMCC and Tuggle Duggins that might refute such an assumption. Therefore, as Tuggle Duggins was the "independent actor" providing legal representation to the Browns, we conclude under these facts that Tuggle Duggins was also an independent contractor.

Other jurisdictions have reached conclusions different from that reached in *Gardner* and different from that reached in this

case. *E.g., In re Allstate Ins. Co.,* 722 S.W. 2d 947 (Mo. 1987) (declining to follow *Gardner); Boyd Bros. Transportation Co. v. Fireman's Fund Ins. Co.,* 729 F. 2d 1407, 1410 (11th Cir. 1984) (noting Georgia, Texas, Kansas, Alaska, and Iowa hold attorney is not independent contractor); *see also* Note, *The Unauthorized Practice of Law by Corporations: North Carolina Holds the Line,* 65 N.C.L. Rev. 1422, 1435 (1987) (noting some courts and ABA view insured, insurer, and attorney as "loose partnership"). Nevertheless, the *Gardner* Court's analysis that, under North Carolina law, an insurer can defend its insured only by retaining independent counsel leaves no theoretical justification in this state for imputing the retained counsel's negligence to the insurer *solely* because the insurer provides independent counsel under its policy as authorized in *Gardner. See* A. Windt, *Insurance Claims and Disputes: Representation of Insurance Companies and Insureds,* Sec. 4687 at 193 (1982) (better reasoning is that insurer not vicariously liable for negligence of attorneys who conduct insured's defense); *Merritt v. Reserve Ins. Co.,* 34 Cal. 3d 858, 110 Cal. Rptr. 511 (Cal. App. 1973) (oft-cited case for such traditional analysis).

Therefore, as these facts show only that the attorneys employed by LMCC were independent contractors, their negligence, if any, is not imputable to LMCC. *See Hendricks v. Leslie Faye, Inc.,* 273 N.C. 59, 62, 159 S.E. 2d 362, 365 (1968) (no vicarious liability for torts of independent contractors). We note in passing that plaintiffs have neither alleged nor offered evidence that LMCC was negligent in selecting Tuggle Duggins as the Browns' attorney. *Cf. Page v. Sloan,* 12 N.C. App. 433, 439, 183 S.E. 2d 813, 817, *aff'd,* 281 N.C. 697, 190 S.E. 2d 189 (1972) (employer must exercise care to secure competent independent contractor). Accordingly, the trial court properly entered summary judgment for LMCC as to those vicarious liability claims against LMCC arising from the alleged negligence of Tuggle Duggins.

## III

[6] Plaintiffs finally contend LMCC breached its contract to defend the Browns because it failed to defend them after paying $25,000 to Hinson. An insurer's duty to defend its insured in a motor vehicle liability action arises from the language of the insurance contract since there exists no statutory obligation in

North Carolina to provide a defense for the insured. *Cf.* N.C.G.S. Sec. 20-279.21 (1983) (statute includes no obligation to defend insured); *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.,* 315 N.C. 688, 691, 340 S.E. 2d 374, 377 (1986) (extent of duty to defend requires resolution of scope of policy provisions); *see also Carrousel Concessions, Inc. v. Florida Ins. Guaranty Ass'n,* 483 So. 2d 513, 516 (Fla. App. 3rd Dist. 1986) (insurer's duty to defend arises solely from language of insurance contract). The LMCC policy provides in relevant part:

> We will settle or defend, as we consider appropriate, any claim or suit asking for [covered damages]. In addition to our limit of liability, we will pay all defense costs we incur. *Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.* [Emphasis added.]

Over the Browns' objections, LMCC paid Hinson an advance payment of $25,000 under Section 1-540.3(a) (1983) which provides in part:

> Such advance or partial payment or payments shall not constitute an admission of liability on the part of the person . . . on whose behalf the payment or payments are made or by the insurance carrier making the payments . . . The receipt of the advance partial payment or payments shall not in and of itself act as a bar, release, accord and satisfaction, or a discharge of any claims of the person or representative receiving the advance or partial payment or payments, unless by the terms of a properly executed settlement agreement it is specifically stated that the acceptance of said payment or payments constitutes full settlement of all claims . . .

N.C.G.S. Sec. 1-540.3(a) (1983). Although LMCC has not settled the Browns' liability to Hinson under the terms of Section 1-540.3, LMCC contends its $25,000 advance payment to Hinson "exhausted" the policy limits and therefore ended its contractual duty to defend the Browns. Conversely, the Browns vehemently reiterate their objection to LMCC's advance payment and contend that such payment over their objection did not discharge LMCC's duty to defend under the contract. As only the meaning of the policy provisions is in dispute, our review of the court's summary judgment requires only that we determine whether, given these provisions, LMCC was entitled to judgment as a matter of law.

*See Weaver v. Home Security Life Ins. Co.*, 20 N.C. App. 135, 201 S.E. 2d 63 (1973).

Whether LMCC breached its contract to defend the Browns requires us to construe the disputed meaning of the policy provision noted above. We first note the policy provides defense coverage "in addition to" the policy's liability limits. It is a well recognized legal principle that an insurer's duty to defend its insured is separate from and broader than the insurer's duty to indemnify the insured. *See, e.g., Waste Management of Carolinas, Inc.*, 315 N.C. at 691, 340 S.E. 2d at 377; *see generally Windt*, Sec. 4.30 (1982 and 1987 Cum. Supp.) (collecting cases). As the duties to defend and indemnify arise by contract, LMCC could presumably contractually limit its duty to defend. *Cf. National Union Ins. Co. of Washington, D.C. v. Phoenix Assurance Co. of New York*, 301 A. 2d 222, 224-25 (D.C. 1973) (duty to defend terminated after payment of policy limits since policy stated duty ended when company "paid or deposited in court such part of such judgment as does not exceed the limit of the company's liability"). However, we reject LMCC's contention that the only reasonable interpretation of the disputed provision is that "the policy confines the insurer's duty to present a defense for the insured to those claims in which the limits of liability has [sic] not been *exhausted*." (Emphasis added.) This "interpretation" merely restates the essential inquiry which is the intended meaning and scope of "exhausted" as used in the policy.

"Exhaust" is a broad term meaning to use up, consume or deplete. *American Heritage Dictionary* at 475 (2d ed. 1982). Without further specifying how or by whom the coverage may be "exhausted," LMCC's application of this broad "limitation" would apparently allow LMCC to expend $25,000 in any manner whatsoever rather than defend the Browns. This demonstrates that the provision does not so much limit plaintiffs' contractual right to a defense as nullifies it since a multitude of conflicting, albeit reasonable, results are all perfectly consistent with this unqualified use of the word "exhausted." For example: 1) defense coverage would end after LMCC expended $25,000 by settlement or judgment with one (or several plaintiffs); 2) rather than reach a settlement or judgment, LMCC could choose to pay a plaintiff $25,000 in advance and never investigate the Browns' defense; 3) LMCC could choose to pay the policy limits and discharge its duty

to defend—but only after it had in good faith investigated the Browns' defense; or 4) while retaining the right to "settle or defend" the action, LMCC could terminate its duty to defend the Browns through "advance payments"—but only with the Browns' consent.

Other interpretations are possible. Each is perhaps reasonable but each gives the Browns a significantly different right to be defended under the policy. We note this ambiguity of intention is specifically addressed by the policy with respect to other coverages: uninsured motorist coverage is paid "only after the limits of liability . . . have been *exhausted by payment of judgments or settlements*" and LMCC's duty to pay interest on a judgment "ends when [LMCC] *offers* to pay that part of the judgment which does not exceed our limits of liability." (Emphasis added.) *Cf.* N.C.G.S. Sec. 20-279.2 (1983) (specifying when "exhaustion" of liability coverage occurs for purpose of underinsured coverage). Had LMCC specified more clearly how its duty to defend was limited by paying the policy limits, the Browns could have rationally and efficiently determined whether or by how much they needed to adjust their policy limits in order to receive the desired defense coverage. *Cf. Great American Ins. Co. v. Tate Construction Co.*, 303 N.C. 387, 395, 279 S.E. 2d 769, 774 (1981) (as insurance offered on "take it or leave it" basis, frequently only term over which insured has control is amount of coverage); *Cole's Restaurant, Inc. v. North River Ins. Co.*, 105 Misc. 754, 432 N.Y.S. 2d 844, 845 (Sup. Ct. 1980), *rev'd on other grounds*, 85 A.D. 2d 894, 446 N.Y.S. 2d 734 (N.Y. App. Div. 1981) (where payment of consideration is also for defense coverage, "liability insurance" is "litigation insurance" as well). Instead, LMCC's unqualified use of the word "exhausted," without more, renders the effect of the limitation uncertain or capable of several reasonable but conflicting interpretations: this ambiguity must thus be resolved against LMCC and in favor of the Browns. *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E. 2d 773, 777 (1978).

Consequently, we agree with the Georgia Court of Appeals' construction of an identical provision in *Anderson v. United States Fidelity & Guaranty Co.*, 177 Ga. App. 520, 339 S.E. 2d 660, 661 (1986):

[A]ppellee has tendered into court the remainder of its policy limits and withdrawn from the defense of the claims against appellant, without the consent of appellant and without a determination of the liability of appellant. 'Although courts are divided on the question, the general rule is that an insurer is not absolved of its duty to defend in the latter situation where the policy limits are tendered [into court], without the consent of the insured, prior to settlement or judgment.' . . . There is no intimation in the policy that its duty to defend may be satisfied by merely paying into court the applicable policy limits. To read the policy otherwise would render a near nullity a most significant protection afforded by the policy—that of defense. We do not agree with the appellee that the term "exhaust" encompasses the paying into court of the policy limits, but interpret that term to mean the payment either of a settlement or of a judgment wholly depleting the policy amount.

(Citations omitted.)

This analysis of the contractual provision was clearly that adopted by Mr. Brown who appeared without counsel in the Hinson action in order to challenge Tuggle Duggins' right to withdraw. We recognize that over the years the insurance industry has moved towards contractually limiting its duty to defend its insureds. *See generally Gross v. Lloyds of London Insurance Co.,* 121 Wis. 2d 78, 358 N.W. 2d 266, 268-270 (Wis. 1984) (tracing subsequent modifications of duty to defend and indemnify in standard form liability policy); *see also* E. Zulkey and M. Pollard, "Duty to Defend after Exhaustion of Policy Limits," *For the Defense,* 21-28 (June 1985). However, given the unnecessarily ambiguous use of the word "exhaust" in this particular policy, we adopt plaintiffs' interpretation which requires LMCC to continue defending the Browns until a settlement or judgment is reached despite having paid its policy limits under Section 1-540.3. Consequently, the trial court erroneously entered summary judgment for LMCC as to the claim that LMCC had breached its contract to defend plaintiffs.

To summarize: we affirm the court's dismissal under Rule 12(b)(6) of the "design defect" and "fraudulent concealment" claims against GMC; however, we reverse and remand the court's

dismissal of the fraud claim arising from those representations by GMC quoted earlier. We affirm the court's summary judgment for LMCC on the vicarious liability claims but reverse and remand the court's summary judgment as to the claim that LMCC breached its contract to defend.

Affirmed in part and reversed in part and remanded.

Judge BECTON concurs.

Judge PHILLIPS concurs in the result.