SUZANNE ENGLISH McCRARY, BY AND THROUGH HER GENERAL GUARDIAN, CHARLES W. McCRARY, JR., PLAINTIFF V. TERESA BYRD AND HAM'S RESTAURANTS, INC., (FORMERLY HAM'S OF BURLINGTON, INC.), DEFENDANTS

No. COA00-1400

(Filed 19 February 2002)

**1. Appeal and Error— appealability—denial of arbitration**

An order denying arbitration is immediately appealable even though interlocutory because it involves a substantial right which might be lost if appeal is delayed.

**2. Insurance— underinsured motorist—partial reimbursement—exhaustion of coverage**

The trial court erred by concluding that Farm Bureau's limits of liability had not been exhausted and that underinsured motorist provisions had not been triggered where Farm Bureau had insured defendant Byrd for $100,000 per person, Farm Bureau paid $100,000 to plaintiff in a settlement with Byrd, and Farm Bureau received a $35,000 reimbursement from defendant

---

Ham's. The focus is not on Farm Bureau's net payout, but whether it paid plaintiff the full dollar amount set in the policy as the limit of liability.

**3. Insurance— underinsured motorist—subrogation rights— approval of settlements**

The trial court erred by concluding that plaintiff breached her underinsured motorist contract with Nationwide by not giving Nationwide the opportunity to approve her settlement with defendants. Nationwide had agreed to waive any and all subrogation rights it had in the action and the consent clause no longer served the primary purpose of protecting Nationwide's right to subrogation. There was no evidence of collusion between the tortfeasor and the insured; indeed, collusion was not raised before the trial court.

**4. Arbitration and Mediation— failure to submit to depositions—waiver**

The trial court erred by holding that plaintiff breached her underinsured motorist insurance contract with Nationwide and was not entitled to arbitration where she failed to voluntarily submit to depositions after she had filed a motion to compel arbitration. Plaintiff had a well-founded belief that her participation in a deposition after she had requested arbitration may have resulted in waiving arbitration.

**5. Contribution— insurance carrier—not a tortfeasor—no right of contribution**

The trial court erred by concluding that plaintiff's release of a restaurant from a dram shop claim extinguished any claims Nationwide would have had for contribution against the restaurant; Nationwide was not a tortfeasor and had no right of contribution.

**6. Arbitration and Mediation— waiver—delay—expenditure of funds**

The trial court erred by finding that plaintiff had waived arbitration based upon findings that Nationwide had expended $60,000 defending the claim and that evidence was lost as a result of plaintiff's alleged delay in seeking arbitration, but there was no finding about whether any of those expenditures resulted from plaintiff's delay in demanding arbitration, there is no indication that plaintiff's objections to depositions in 1998 could have caused records to be destroyed in 1996, and the court did not find

McCRARY v. BYRD

[148 N.C. App. 630 (2002)]

or conclude that plaintiff's delay in seeking arbitration caused evidence to be destroyed.

Appeal by plaintiff from order dated 12 June 2000 by Judge C. Preston Cornelius in Guilford County Superior Court. Heard in the Court of Appeals 4 December 2001.

*Thomas L. Nesbit, P.C., by Thomas L. Nesbit; and Womble Carlyle Sandridge & Rice PLLC, by Burley B. Mitchell, Jr., for plaintiff-appellant.*

*Teague, Rotenstreich & Stanaland, LLP, by Kenneth B. Rotenstreich and Paul A. Daniels, for unnamed defendant-appellee Nationwide Mutual Insurance Company.*

*No brief filed for defendant-appellee Byrd.*

GREENE, Judge.

Suzanne English McCrary (Plaintiff) by and through her general guardian, Charles W. McCrary, Jr., appeals an order dated 12 June 2000 in favor of Nationwide Mutual Insurance Company (Nationwide) denying Plaintiff's motion to compel arbitration.

On 23 October 1997, Plaintiff filed a complaint (the Complaint) together with attached interrogatories against Teresa Byrd (Byrd), Ham's Restaurants, Inc. (Ham's), and Nationwide.[1] Plaintiff also served N.C. Farm Bureau Insurance Company (Farm Bureau), Byrd's liability insurer.[2] In the Complaint, Plaintiff alleged negligence on the part of Ham's and Byrd for an incident occurring in the early morning hours of 19 October 1991. As a result of the incident, Plaintiff sustained serious physical injuries.

Nationwide provided uninsured/underinsured motorist coverage to Plaintiff. In order to provide coverage to Plaintiff, Nationwide's policy required that it be notified promptly of how, when, and where an accident occurred. Any person seeking coverage had the responsibility to: cooperate with Nationwide in the investigation, settlement, or defense of any claim or suit; authorize Nationwide to obtain medical reports and other pertinent records; and submit, as often as

---

1. After Nationwide filed a motion, the trial court deleted Nationwide's name from the caption of the proceeding and Nationwide was allowed to defend as an unnamed defendant.

2. Farm Bureau insured Byrd in a policy of automobile liability insurance providing liability limits in the amount of $100,000.00 per person/$300,000.00 per occurrence.

reasonably required, to examinations under oath. Nationwide would not provide uninsured or underinsured motorist coverage for bodily injury sustained by any person if that person or legal representative "settle[d] the **bodily injury** . . . claim without [Nationwide's] written consent." Nationwide also provided that if it and an insured did not agree as to whether that person was entitled to coverage or as to the amount of damages, the insured had the right to demand arbitration. If an insured, however, declined to arbitrate, Nationwide's "liability [would] be determined only in a legal action."

Prior to Byrd's deposition, Nationwide wrote a letter to Byrd dated 12 March 1998 which stated that pursuant to Byrd's request, "and after an asset check was performed, Nationwide has agreed to waive any and all subrogation rights they may have in the matter above captioned."[3] Nationwide later filed notices of deposition for five non-party witnesses. Plaintiff's attorney attended all five depositions and examined the witnesses.

In addition to the above noticed depositions, Nationwide noticed the depositions of Plaintiff and her parents on 13 April 1998. Subsequently, Nationwide filed a notice on 9 June 1998 to take the deposition of Dr. Andrew P. Mason (Dr. Mason). All four depositions were scheduled to take place at the office of Plaintiff's attorney. Plaintiff objected to Dr. Mason's deposition subpoena arguing the subpoena was not properly issued, it was not properly served on Dr. Mason, it was "overbroad," and there was no court order in place permitting the deposition of Dr. Mason. In response, Nationwide filed a motion for sanctions against Plaintiff for failure to comply with discovery requests and also filed a motion to compel the deposition testimony of Dr. Mason.

Between 30 April 1998 and 24 June 1998, Plaintiff entered into settlement negotiations with Byrd and Ham's, unbeknownst to Nationwide. On 24 June 1998, Plaintiff informed Nationwide of its tentative settlement with Byrd and Ham's by which Plaintiff would receive $100,000.00 from Farm Bureau, the amount equal to Byrd's limit of liability. As part of the settlement, Ham's also agreed to pay $35,000.00 to Farm Bureau and $5,000.00 to Plaintiff. By letter dated 24 June 1998, Plaintiff demanded the dispute between Plaintiff and Nationwide be resolved by arbitration and requested that no further discovery be permitted.

3. The caption listed Byrd, Ham's, and Nationwide as defendants.

In an affidavit dated 22 July 1998, Nationwide's attorney stated Plaintiff had engaged in substantial discovery, including: Plaintiff serving numerous interrogatories on Ham's, Byrd, and Nationwide; the depositions of non-party witnesses were noticed by the agreement of Plaintiff and Nationwide; Plaintiff noticed the deposition of Byrd; and Plaintiff deposed non-party witnesses, all of whom would be able to attend any arbitration meeting. As of 23 June 1998, Nationwide had accrued at least $8,396.19 in legal fees and expenses.

On 22 July 1998, the trial court heard arguments on Nationwide's motion to compel discovery and its motion to prohibit arbitration, and also heard arguments on Plaintiff's motion for a protective order and her demand for arbitration. The trial court found, in pertinent part, that Plaintiff "wilfully failed to present [herself or her parents] or Andrew Mason for the depositions at the time and place properly noticed . . . without just cause and . . . without a filed objection or motion for protective order." On 28 July 1998, the trial court filed an order requiring Plaintiff, her parents, and Dr. Mason to present themselves for their depositions on or before 31 July 1998. The motions with respect to arbitration were reserved to be heard by the trial court at a later date.

After an appeal to this Court, the depositions of Plaintiff and her parents were taken on 29 February 2000. Subsequently, on 14 April 2000, the depositions of administrators and nursing staff at the University of North Carolina Hospitals were taken. During the depositions of hospital administrators, it was learned that certain records concerning the chain of custody for Plaintiff's blood sample had been destroyed in 1996.

On 14 April 2000, Plaintiff's case against Nationwide was set to be tried during the week of 5 June 2000. On 28 April 2000, a Nationwide claims adjuster filed an affidavit stating Nationwide had incurred approximately $30,970.19 for the handling of Plaintiff's tort action against Byrd and Ham's, and it had expended approximately $29,859.14 in Nationwide's claims against Plaintiff for breach of contract, bad faith, and a declaratory judgment action. Subsequently, Plaintiff brought her motion to compel arbitration before the trial court on 2 June 2000. In an order dated 12 June 2000, the trial court found facts consistent with the above stated facts, including:

29. During the period of October 22, 1997, and the date of the hearing of the motion to compel arbitration, [Nationwide] has

McCRARY v. BYRD

[148 N.C. App. 630 (2002)]

expended more than $60,000.00 in the defense of this claim and the prosecution of a companion case.

The trial court then concluded: the payment of $100,000.00 by Farm Bureau was not an exhaustion of limits; Nationwide's underinsured motorist coverage provision was not triggered; Plaintiff breached her contract of insurance with Nationwide by not submitting to her deposition when noticed, not giving Nationwide an opportunity to approve the settlement between Plaintiff and Byrd and Ham's, and releasing Ham's "from a viable dram shop claim . . . [because it] extinguished any claims that [Nationwide] would have had for contribution against Ham's"; Nationwide has been prejudiced by the actions of Plaintiff, including expending $60,000.00 in litigation costs, a declaratory judgment, as well as on a prior appeal; and Nationwide was "prejudiced by the delay of . . . Plaintiff in proceeding forward with certain depositions, as evidence that could have been gained at an earlier time was lost, due to the destruction of records."

---

The issues are whether: (I) Plaintiff breached the terms of the policy with Nationwide by failing to: (A) exhaust the limits of Byrd's liability insurance; (B) give Nationwide an opportunity to approve the settlement between Plaintiff and Ham's and Byrd; (C) submit to her depositions when noticed; and (D) preserve Nationwide's claims for contribution against Ham's; and (II) Plaintiff waived her contractual right of arbitration by: (A) Nationwide expending $60,000.00 in litigation costs; and (B) her delay in appearing for noticed depositions.

[1] "Initially, we note that an order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *Prime South Homes, Inc. v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991).

I

*Contractual Entitlement to Arbitration*

Nationwide argues in its brief to this Court that Plaintiff's failure to abide by her contract with Nationwide precluded Plaintiff's right to arbitrate. We need not decide whether an alleged failure by Plaintiff to abide by the contract precludes arbitration as we determine Plaintiff has abided by the terms of the contract.

McCRARY v. BYRD

[148 N.C. App. 630 (2002)]

A

*Exhaustion*

**[2]** Plaintiff argues the trial court erred in concluding Plaintiff failed to exhaust the limits of Byrd's liability insurance. We agree.

Underinsured motorist coverage is available to an insured after the "payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted." N.C.G.S. § 20-279.21(b)(4) (1999). Exhaustion occurs "when either (a) the limits of liability per claim have been paid upon the claim, or (b) by reason of multiple claims, the aggregate per occurrence limit of liability has been paid." *Id.* " 'Exhaust' is a broad term meaning to use up, consume or deplete." *Brown v. Lumbermens Mut. Cas. Co.*, 90 N.C. App. 464, 475, 369 S.E.2d 367, 373, *disc. review denied*, 323 N.C. 363, 373 S.E.2d 541 (1988), *aff'd*, 326 N.C. 387, 390 S.E.2d 150 (1990).

In this case, Farm Bureau insured Byrd for $100,000.00 per person. In Byrd's settlement with Plaintiff, Farm Bureau was to pay $100,000.00 to Plaintiff. At the time Farm Bureau paid the $100,000.00 to Plaintiff, it paid its limits of liability per person; Byrd's limits of liability under the Farm Bureau policy were thus "use[d] up, consume[d] or deplete[d]." Plaintiff has therefore exhausted Byrd's liability limits with Farm Bureau, regardless of whether Farm Bureau received additional payment from Ham's, as the $100,000.00 payment to Plaintiff represented Farm Bureau's limits of liability.[4] As Farm Bureau's limits of liability had been exhausted, the provisions of Plaintiff's underinsured motorist contract with Nationwide applied. Accordingly, the trial court erred in concluding Farm Bureau's limits of liability had not been exhausted and, thus, the underinsured motorist coverage provisions had not been triggered.

B

*Notice of Settlement*

**[3]** Plaintiff argues the trial court erred in concluding Plaintiff breached her contract with Nationwide by not giving Nationwide an

---

4. Nationwide argues there has been no exhaustion as Farm Bureau received reimbursement of $35,000.00 from Ham's, thus, Farm Bureau's net payout was $65,000.00. In determining exhaustion, the focus is not on Farm Bureau's net payout but whether Farm Bureau paid to Plaintiff the full dollar amount its policy set as the limits of liability.

opportunity to approve the settlement Plaintiff had with Byrd and Ham's. We agree.

The primary purpose of a consent-to-settlement clause is to "protect the insurer's right of subrogation." *Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 298, 378 S.E.2d 21, 27 (1989). If an insurer has waived its right to subrogation, an insured's failure to obtain the insurer's consent before entering into a settlement agreement does not, as a matter of law, bar the insured's recovery against the insurer for underinsured motorist coverage. *Id.* Consent-to-settlement clauses, however, also serve the secondary purpose of protecting the underinsured motorist carrier "against collusion between the tort[-]feasor and the insured and noncooperation on the part of the tort[-]feasor after his or her release by the insured." *Id.* at 299, 378 S.E.2d at 27.

In this case, in a letter dated 12 March 1998, Nationwide agreed to waive any and all subrogation rights it had in Plaintiff's action against Byrd and Ham's. Since Nationwide waived its right of subrogation, the consent-to-settlement clause no longer served the primary purpose of protecting Nationwide's right to subrogation. As to the secondary purpose, there is no evidence of collusion in the record to this Court. Indeed, collusion was not raised before the trial court nor addressed by the trial court. Accordingly, the trial court erred in concluding Plaintiff's failure to obtain Nationwide's consent before entering into the settlement with Byrd and Ham's barred her recovery against Nationwide. *See id.* at 298, 378 S.E.2d at 27.

C

*Depositions*

[4] Plaintiff argues her failure to voluntarily submit to depositions after she had filed a motion to compel arbitration was not a breach of her contract with Nationwide. We agree.

Discovery during arbitration, as opposed to litigation, is designed to be minimal, informal, and less extensive. *Palmer v. Duke Power Co.*, 129 N.C. App. 488, 491, 499 S.E.2d 801, 803 (1998). Thus, contrary to a civil case, where a broad right of discovery exists, discovery during arbitration is generally at the discretion of the arbitrator. *Id.* at 492, 499 S.E.2d at 804. Moreover, participation in discovery not available at arbitration may constitute a waiver of a party's right to arbitrate. *Prime South*, 102 N.C. App. at 260-61, 401 S.E.2d at 826.

In this case, Plaintiff's deposition, although scheduled prior to Plaintiff filing her motion to compel arbitration, was scheduled to take place at a date beyond the time Plaintiff had filed her motion to compel arbitration. Although Plaintiff refused to attend the scheduled deposition until after a court order and her appeal to this Court, Plaintiff nevertheless submitted to the noticed deposition. Based on case law, Plaintiff had a well-founded belief that her participation in a deposition after she had already requested arbitration may have resulted in her waiving her right to arbitration. Moreover, the provision in Nationwide's contract required that an insured submit to examinations under oath as cooperation to the defense, settlement, or investigation of a claim. At the time Nationwide sought to depose Plaintiff, there was no indication Nationwide wished to settle with Plaintiff, rather, Nationwide appeared to be assuming an adversarial role. Likewise, there is no provision in Nationwide's contract with Plaintiff that if Plaintiff failed to submit to a deposition she would waive either coverage or her right to arbitrate. Accordingly, the trial court erred in holding Plaintiff breached her contract with Nationwide and thus was not entitled to arbitration.

D

*Nationwide's Right to Contribution*

[5] Plaintiff argues the trial court erred in concluding Plaintiff's release of Ham's "from a viable dram shop claim . . . extinguished any claims that [Nationwide] would have had for contribution against Ham's." We agree.

"The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability." N.C.G.S. § 1B-1(b) (1999); *Johnson v. Hudson*, 122 N.C. App. 188, 190, 468 S.E.2d 64, 66 (1996). An underinsured motorist carrier is not a tort-feasor and thus has no right of contribution. *Johnson*, 122 N.C. App. at 190, 468 S.E.2d at 66.

In this case, Nationwide, an underinsured motorist insurance carrier, is not a tort-feasor and thus has no right of contribution against Ham's. Accordingly, the trial court erred in concluding Plaintiff's release of Ham's extinguished any claims Nationwide would have had for contribution against Ham's.

## II

### *Waiver of Arbitration*

**[6]** Nationwide next argues that even if Plaintiff were entitled to arbitration, she nonetheless waived her right to arbitrate. We disagree.

A party "impliedly waive[s] its contractual right to arbitration if by its delay or by actions it takes which are inconsistent with arbitration, another party to the contract is prejudiced by the order compelling arbitration." *Cyclone Roofing Co., Inc. v. Lafave Co., Inc.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984) (footnote omitted). A party is prejudiced if, for example,

> it is forced to bear the expenses of a lengthy trial . . . ; evidence helpful to a party is lost because of delay in the seeking of arbitration . . . ; a party's opponent takes advantage of judicial discovery procedures not available in arbitration . . . ; or, by reason of delay, a party has taken steps in litigation to its detriment or expended significant amounts of money thereupon.

*Id.* at 229-30, 321 S.E.2d at 876-77 (citations omitted). A party, however, does not waive her contractual right to arbitration or prejudice the other party by the mere filing of pleadings. *Prime South*, 102 N.C. App. at 259, 401 S.E.2d at 825.

## A

### *Litigation Costs*

Plaintiff contends the trial court incorrectly held Nationwide was prejudiced by its expenditure of $60,000.00 due to Plaintiff's delay in seeking arbitration, as "there are no findings Nationwide could have avoided these expenses through an earlier request for arbitration, or that such expenses were incurred after the right to demand arbitration accrued." We agree.

In this case, prior to Plaintiff's demand for arbitration, Nationwide had expended only $8,396.19 in legal fees and expenses. The amount of money expended by Nationwide prior to Plaintiff demanding arbitration occurred primarily from Nationwide noticing depositions and examining witnesses, as well as examining the scene of the accident. Although the trial court found Nationwide had expended more than $60,000.00 in the defense of Plaintiff's case during the period between 22 October 1997 and the date of the hearing before the trial court, there was no finding whether any of those fees

resulted from Plaintiff's delay in demanding arbitration. Indeed, almost half of the $60,000.00 constituted Nationwide's pursuit of claims against Plaintiff in a separate action. Accordingly, as Nationwide had expended only $8,396.19 in legal fees prior to Plaintiff's demand for arbitration, the trial court erred in concluding Nationwide was prejudiced by having expended $60,000.00 in litigation costs.

B

*Delay in Depositions*

Plaintiff contends the trial court erred in finding evidence was lost as a result of Plaintiff's alleged delay in seeking arbitration. We agree.

In this case, the trial court concluded Nationwide was "prejudiced by the delay of . . . Plaintiff in proceeding forward with certain depositions, as evidence that could have been gained at an earlier time was lost, due to the destruction of records." As the trial court found the records were destroyed in 1996 and all the depositions Plaintiff objected to were scheduled to take place in 1998, there is no indication that Plaintiff's delay in proceeding with the depositions as scheduled in 1998 could have caused records to be destroyed in 1996. We note that the trial court did not find or conclude that Plaintiff's delay in seeking arbitration caused evidence to be destroyed, only that Plaintiff's delay in proceeding with the depositions caused evidence to be destroyed. In addition, as previously stated in part I(C) of this opinion, Plaintiff did not waive arbitration by failing to submit to depositions. Accordingly, the trial court erred in concluding Plaintiff's delay in proceeding with the depositions caused certain evidence to be lost.

We note both parties presented arguments in their brief to this Court concerning Plaintiff's waiver of arbitration by participating in discovery not available at arbitration. While making extensive findings regarding Plaintiff's participation in discovery, the trial court neither found nor concluded Plaintiff waived her contractual right of arbitration by participating in discovery not available at arbitration. Because Nationwide has failed to cross-appeal or cross-assign error to this omission by the trial court, we do not address the issue of whether Plaintiff waived her right to arbitrate by participating in discovery.

Reversed and remanded.

Judges McCULLOUGH and CAMPBELL concur.